### PEOPLE ex rel. SPEIGHT v. COLER.

(Supreme Court, Appellate Division, Second Department. June 7, 1898.)

1. OFFICERS—DISCHARGED VETERANS—GREATER NEW YORK CHARTER.
   The provisions of the general act (Laws 1896, c. 821) protecting the official tenure of honorably discharged veterans holding positions in the state or in the several cities, except those "holding a strictly confidential position," did not repeal or modify the local act (Laws 1887, c. 708, incorporated, in substance, in the charter of 1888) protecting the tenure of veterans holding certain positions in the city of Brooklyn, which contains no such qualifying clause; and the latter is therefore still operative, under Greater New York Charter, § 127.

2. SAME—STRICTLY CONFIDENTIAL POSITION.
   Officers who are compelled, in the course of their duties, and by virtue of positive provisions of law, to rely upon and act through subordinate officers or employés, are not ordinarily responsible to the government for the misfeasance or nonfeasance of such subordinates; and it seems, therefore, that the fact that the subordinate is a collector of revenues may not render his position "strictly confidential," within the meaning of the veteran law (Laws 1896, c. 821).

Appeal from special term, Kings county.

Application by the people of the state of New York, on the relation of Henry W. Speight, against Bird S. Coler, as comptroller of the city of New York, for a writ of mandamus against Bird S. Coler. From an order granting the writ, and directing appellant to reinstate respondent as collector of city revenue at Wallabout Market, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Almet F. Jenks, for appellant.
Joseph A. Burr, for respondent.

WILLARD BARTLETT, J. The Greater New York charter contains the following provision for the protection of veteran soldiers, sailors, and firemen in the public service:

"All veterans either of the army or navy or the volunteer fire departments, now in the service of either of the municipal and public corporations hereby consolidated, who are now entitled by law to serve during good behavior, or who cannot under existing law be removed except for cause, shall be retained in like positions and under the same conditions by the corporation constituted by this act, to serve under such titles and in such way as the head of the appropriate department or the mayor may direct." Section 127.

At the time when this provisio took effect, the relator, an honorably discharged sailor of the late war of the Rebellion, was in the service of the city of Brooklyn as collector of fees at Wallabout Market. If he could not, under the law as it then existed, be removed except for cause, he became entitled, upon the consolidation of the several municipalities, to be retained in a position similar to that which he then occupied, to serve under such title and in such manner as the comptroller or mayor might prescribe; and after the new charter took effect he was so retained for a while, and appears to have been denominated a "collector of city revenue." On February 15, 1898, the comptroller notified him that his services in that capacity would no longer be required; and it is this attempted removal, without cause shown or a hearing had, that the present proceeding is brought to review.

The relator invokes the protection of chapter 708 of the Laws of 1887, which forbids the removal, except for good cause shown after a hearing had, of any person holding a position in the city of Brooklyn and county of Kings, receiving a salary from the city or county treasurer, who shall be an honorably discharged soldier or sailor of the late war of the Rebellion. The respondent insists that the effect of this act of 1887 (the substance of which was incorporated in the Brooklyn charter of 1888) is qualified and limited by chapter 821 of the Laws of 1896, so that its protection no longer extends to any person holding a strictly confidential position; and he also maintains that the position of the relator was of a confidential character. To this contention the relator replies that no exception was made as to persons holding confidential positions in the act of 1887, and, inasmuch as that act was special and local, it was not repealed or affected by any subsequent general legislation for the protection of veterans, which was qualified by the proviso that the shield of the statute should not cover positions of a confidential character.

The act of 1896, c. 821, is undoubtedly general in its application to the public service of the state and its various municipalities. It provides that:

"No person holding a position by appointment or employment in the state of New York, or of the several cities, counties, towns, or villages thereof, and receiving a salary or per diem pay from the state or from any of the several cities, counties, towns or villages thereof, who is an honorably discharged soldier, sailor or marine, having served as such in the Union army or navy during the war of the Rebellion and who shall not have served in the Confederate army or navy, shall be removed from such position or employment except for incompetency or misconduct shown, after a hearing upon due notice upon the charge made."

The statute then imposes the burden of proving incompetency or misconduct upon the party alleging the same, and proceeds as follows:

"But the provisions of this act shall not be construed to apply to the position of private secretary or deputy of an official or department, or to any other person holding a strictly confidential position."

Is the negative limitation contained in this last clause to be read into the local act of 1887, which related exclusively to veteran soldiers and sailors in the public employment in the city of Brooklyn and county of Kings? We think not. We have already held that the act of 1887, prior to the time when the Greater New York charter took effect, remained in force, unrepealed by chapter 577 of the Laws of 1892, which was a separate statutory regulation, relating to veterans and their tenure of office, in its terms closely resembling the act of 1896 now under consideration, and also containing a similar clause excepting confidential positions from its operation. People v. England, 16 App. Div. 97, 45 N. Y. Supp. 12. In each enactment the clause of limitation is expressly applied to the provisions of the particular statute in which it occurs. The language is, "but this provision shall not be construed to apply," etc., and, "but the provisions of this act shall not be construed to apply," etc. Each was a general statute, and left the local law of 1887, applicable only to Brooklyn, co-existing and unmodified, under the rule of construction which saves a statute of local application from repeal by a statute general in its terms, unless it is plain that there was a contrary intention on the part of the legislature. Buffalo Cemetery Ass'n v. City of Buffalo, 118 N. Y. 61, 22 N. E. 962.

In this view, the decision of the special term must be affirmed; but, even if the local act of 1887 were deemed to have been amended by the statute of 1896, so as to exclude from the protection thereof veterans holding strictly confidential positions, we are by no means convinced that the employment of the relator is a place of that character. The fact is not established by the classification of the position as confidential by the civil service commission. The act of 1896 uses the term "strictly confidential," and some force must be given to the adverb. It does not appear that the civil service commissioners have placed this or any other position in such a category. Independently of their action, however, the learned counsel for the appellant insists that the place is strictly confidential, because the comptroller, as a public officer, is an insurer of the safety of the public funds, either in his possession, or in that of his subordinates; citing on this point the recent case of Tillinghast v. Morrill, 151 N. Y. 135, 45 N. E. 375. We are not sure that he does not state the liability of his client too strongly. No doubt, a public officer having the custody of public moneys is responsible in law for their loss after they have actually come into his hands, or under his personal control. The decision in Tillinghast v. Morrill, supra, goes no further than this. On the other hand, officers who are compelled in the course of their duties, and by virtue of positive provisions of law, to rely upon and act through subordinate officers or employés, are not ordinarily responsible to the government for the misfeasance or nonfeasance of such subordinates. See Story, Ag. (9th Ed.) §§ 319, 319a. Thus, a collector of customs at San Francisco has been exonerated from liability for the loss of moneys which were received by, and

stolen from, the deputy collector at Monterey. U. S. v. Collier, 3 Blatchf. 325, 349, Fed. Cas. No. 14,833, Nelson and Betts, JJ. "The legal relation between public officers and their sworn assistants," said the court in the case cited, "even when they are acting directly in connection, is generally not that of master and servant, or principal and agent, and the liability of the official superior for defaults of his assistants arises only in case of his own misconduct or neglect." It is not necessary, however, to pursue this interesting branch of the case any further. In discussing it to this extent, we have merely wished to suggest our doubts as to the correctness of the proposition or assumption that the position of the relator was strictly confidential, within the intent and meaning of the law.

The order appealed from should be affirmed. All concur.

Order affirmed, with $10 costs and disbursements.