The People of the State of New York ex rel. Adolph H. Schumann, Relator, *v.* James McCartney, Commissioner of Street Cleaning of the City of New York, Respondent.

*Greater New York — a veteran appointed inspector of street cleaning of the city of Brooklyn subsequently transferred to the same department of Greater New York — power of the street commissioner to remove him.*

A veteran of the War of the Rebellion, holding through a civil service examination the office of inspector of street cleaning of the city of Brooklyn prior to January 1, 1898, under provisions of law forbidding his removal from office except for good cause shown after a hearing had upon due notice, who on January 3, 1898, is transferred to the department of street cleaning of the city of Greater New York, enters such employment, by operation of law, under the same conditions which surrounded his employment by the city of Brooklyn.

The provisions of section 537 of the charter of Greater New York, giving the commissioner of street cleaning of that city power in his discretion to remove any member of the uniformed force of street cleaners "on evidence satisfactory to him," do not apply to such inspector thus transferred, who is within the protection of section 127 of that charter providing for the retention of veterans "in like positions" and "under the same conditions" by the new corporation.

Such an inspector, after receiving notice on March 8, 1898, of his suspension from
duty, was on the morning of the ninth served with a notice to appear before
the commissioner of street cleaning in the afternoon of that day for a hearing;
upon appearing before the commissioner he was sent to a subordinate officer for
trial, where, without having had previous notice of the charges against him,
or an adequate opportunity to meet them, he was confronted by two unsworn
witnesses who testified to alleged facts constituting charges of neglect of duty,
and he was thereafter dismissed by the commissioner.

*Held*, that such proceeding was in no sense a judicial investigation;

That it was improper to receive in such proceedings for removal the testimony
of witnesses not given under the responsibility of an oath;

That the inspector was entitled to be reinstated in his position.

CERTIORARI issued out of the Supreme Court and attested on the
10th day of May, 1898, directed to James McCartney, commissioner
of street cleaning of the city of New York, commanding him to cer-
tify and return to the office of the clerk of the county of Kings all
and singular the proceedings had in regard to the reduction of salary
and the dismissal of the relator from employment in the street clean-
ing department of the city of New York.

*Thomas F. Magner*, for the relator.

*William J. Carr* [*Almet F. Jenks* with him on the brief], for
the respondent.

WOODWARD, J.:

The relator is a veteran of the War of the Rebellion, and in 1894,
having passed the civil service examination required by law, he was
appointed an inspector of street cleaning by the then commissioner
of city works of the city of Brooklyn, continuing in such position
until the absorption of the city of Brooklyn into the Greater New
York on the 1st day of January, 1898, when, by virtue of the pro-
visions of chapter 378 of the Laws of 1897, he became an employee
of the latter city. On the 21st day of January, 1898, the deputy
commissioner of street cleaning in the borough of Brooklyn requested
the relator to resign his position, which the relator refused to do, set-
ting up his right to retain his position under the provisions of the
law in relation to veterans of the War of the Rebellion. Subse-
quently and on the 31st day of January, 1898, the relator was
informed by the same deputy commissioner that he had been trans-
ferred to the department of street cleaning, with the rank of section

foreman, at a salary of $1,000 per annum, or $200 per year less than he had been receiving while in the employ of the city of Brooklyn. He remained employed in the new capacity at the reduced salary until the first of March, when he was transferred to a new and enlarged district, embracing sixty-three miles of street. On the eighth day of March he received a notice of his suspension from duty, and on the ninth day of March, at eleven o'clock A. M., he received a notice to appear before the commissioner of street cleaning at three o'clock in the afternoon of that day for a hearing. He was not notified of the charges against him, nor was he given any time for preparation. He appeared before the commissioner and was sent before a subordinate for trial, where he was for the first time confronted by the charge, and by two witnesses, who, without being sworn, were permitted to testify to the alleged facts constituting the charges of neglect of duty. The relator was given no adequate opportunity to meet the charge brought against him, and the commissioner concluded that "Upon evidence satisfactory to me you are guilty of neglect of duty and disobedience of orders in that you failed to cause your section to be properly cleaned and in submitting a false report in stating that certain streets were cleaned while in fact they were not." Upon this finding the relator was dismissed from the service of the city of New York, and the matter comes before this court upon a writ of certiorari to determine whether the commissioner has acted within the law in thus dismissing the relator.

There is no dispute that the relator was a veteran of the War of the Rebellion, and that he was holding office in the city of Brooklyn prior to the 1st day of January, 1898, under provisions of law which forbade his removal from office "except for good cause, shown after a hearing had" (§ 29, tit. XXII, chap. 583, Laws of 1888, charter of city of Brooklyn), or "except for incompetency or misconduct shown, after a hearing upon due notice, upon the charge made, and with the right to such employe or appointee to a review by writ of certiorari; a refusal to allow the preference provided for in this act to any honorably discharged Union soldier, sailor or marine, or a reduction of his compensation intended to bring about a resignation, shall be deemed a misdemeanor, and such honorably discharged soldier, sailor or marine shall have a

right of action therefor in any court of competent jurisdiction for damages, and also a remedy by mandamus for righting the wrong. The burden of proving incompetency or misconduct shall be upon the party alleging the same." (Chap. 821, Laws of 1896.) By the provisions of section 127 of the Greater New York charter, "All veterans, either of the army or navy or the volunteer fire departments, now in the service of either of the municipal and public corporations hereby consolidated, who are now entitled by law to serve during good behavior, or who cannot under existing law be removed except for cause, shall be retained in like positions and under the same conditions by the corporation constituted by this act, to serve under such titles and in such way as the head of the appropriate department or the mayor may direct." It is evident, therefore, that the relator entered the employ of Greater New York by operation of law "under the same conditions" by which he was surrounded in his employment by the former city of Brooklyn; and it was not within the power of the commissioner of the street cleaning department of the Greater New York, acting under the provisions of section 537 of the Greater New York charter, to arbitrarily remove him from his position, or to do so after a hearing which was entirely lacking in the elements of a judicial investigation of the charge made against the relator.

The Greater New York charter, like all other statutes, is to be considered in its entirety, and it is the duty of the courts to give effect to all of its provisions where such a result is possible. Section 537 gives the commissioner power "in his discretion, on evidence satisfactory to him," to remove any of the members of the uniformed force of street cleaners; but this power relates to the uniformed force which "shall be appointed by the commissioner of street cleaning" (§ 536), and not to those who are transferred by operation of law, and who were, at the time of the transfer, within the protection of the laws made for the purpose of continuing veterans of the War of the Rebellion in civil positions. Section 127 of the Greater New York charter was designed to preserve the rights secured by special and general statutes to the veterans of the War of the Rebellion, who were in the employ of any of the municipalities making up the Greater New York; they were to "be retained in like positions and under the same conditions" by

the new corporation.    It was one of the compromises necessary to bring about the consolidation, and section 537 is to be construed as modified by the provisions of section 127, and the commissioner of the street cleaning department gained no new powers over the relator by reason of his transfer.    As was said by Mr. Justice WILLARD BARTLETT in *People ex rel. Speight* v. *Coler* (31 App. Div. 523), in considering this same provision of law : "At the time when this provision took effect, the relator, an honorably discharged sailor of the late War of the Rebellion, was in the service of the city of Brooklyn as collector of fees at Wallabout market.    If he could not under the law as it then existed be removed except for cause, he became entitled upon the consolidation of the several municipalities to be retained in a position similar to that which he then occupied, to serve under such title and in such manner as the comptroller or mayor might prescribe."

This view of the law gives effect to both provisions ; it enables the commissioner to discharge such members of the uniformed force as he shall have appointed, following the reasoning laid down in *People ex rel. Lee* v. *Waring* (1 App. Div. 594) while preserving to those who were in office in the city of Brooklyn, under the protection of the veteran acts, all of the rights which they had at the time of the consolidation and which were guaranteed to them by the provisions of section 127.    The language of the statute is, not only that they shall "be retained in like positions," but they shall be "under the same conditions."    Veterans of the War of the Rebellion, employed by the city of Brooklyn, could not be removed "except for good cause shown, after a hearing had," or "except for incompetency or misconduct shown, after a hearing upon due notice, upon the charge made," and with "the burden of proving incompetency or misconduct  *  *  *  upon the party alleging the same." (Chap. 821, Laws of 1896.)

There was no hearing, in any judicial sense, in the case now under consideration    The relator, as was said in *People ex rel. Jordan* v. *Martin* (152 N. Y. 311), "Ignorant of his rights, without counsel or witnesses, he stood before his superior officer and judge virtually helpless and mute, because he had not been given the time and opportunity to defend that the law prescribes both for the guilty and the innocent."    This was peculiarly the case with the relator ; he did

not receive his notice of a hearing until eleven o'clock of the day on which he was requested to appear at three o'clock in the afternoon, and he was given no opportunity to have counsel or to make any preparation. Indeed, it is not pretended, on the part of the respondent, that any judicial inquiry was entered into, and he evidently relies upon the provisions of section 537 of the charter of the Greater New York, for he recites in his order of dismissal that " Upon evidence satisfactory to me you are guilty of neglect of duty," which is substantially the language of the statute in the section referred to above ; and in the brief of counsel for the respondent we are cited to this provision of the law. This, as we have already seen, is not sufficient. The relator cannot be deprived of his position upon evidence satisfactory to the commissioner, unless that evidence is procured in the course of a judicial investigation, where the relator has been informed of the charge against him and has had an opportunity of examining the witnesses against him and of presenting evidence in his own behalf. On the hearing, at which the " evidence satisfactory " to the commissioner was elicited, the witnesses were not put under oath, and the entire proceeding was a mere mockery of justice.

" The relator," say the court in *People ex rel. Kasschau* v. *Police Commissioners* (155 N. Y. 40), " was not subject to removal except for some legal cause, to be ascertained and adjudged as matter of fact upon a hearing. This contemplates a judicial investigation in which there must, at least, be some legal responsibility for perjury, or some protection to the accused against falsehood. The issue to be determined was one of fact. The proceeding was judicial in character, and hence the tribunal before which the investigation was had could not dispense with the usual form of procedure by acting upon statements not given under the responsibility of an oath. When the court proceeded to judgment, without the observance of such an essential prerequisite to every judicial inquiry, the determination was not judicial in character, or such as the statute contemplates. While some latitude is allowed with respect to the rules of evidence, yet to remove a party from a public office upon a charge involving a question of fact, without even swearing the witnesses, is to abandon the fundamental form of judicial action. A determination thus made is not the result of a trial or a hearing in any

proper sense, and hence the relator was removed from office without such a trial or hearing as the law contemplates. * * * When a party is protected in the enjoyment of a public office or employ-ment from removal except for cause, to be ascertained and adjudged upon a hearing of a judicial nature, and it appears that he has been removed without any proof of the necessary facts upon oath, the determination, if not absolutely without jurisdiction, is clearly erroneous as matter of law."

If, then, the relator was under the protection of the veteran acts, and that he was does not seem to be open to dispute, the action of the commissioner in dismissing him from the service of the Greater New York without a hearing, in which the forms of a judicial investigation were observed, was without authority, and he is clearly entitled to the relief asked for in the present proceeding.

The determination of the commissioner of street cleaning should be reversed, and the relator should be restored to "a like position and under the same conditions" as those which prevailed at the time of the consolidation of New York and Brooklyn and the other municipalities which go to make up the Greater New York.

All concurred.

Determination annulled and relator reinstated, with fifty dollars costs and disbursements.