PEOPLE ex rel. SCHUMANN v. McCARTNEY.

(Supreme Court, Appellate Division, Second Department. October 25, 1898.)

1. MUNICIPAL CORPORATIONS—VETERAN SOLDIERS—REMOVAL.
    Greater New York Charter, § 537, giving the street-cleaning commissioner power, "in his discretion, on evidence satisfactory to him," to remove employés in his department, does not apply to veteran soldiers who were employed in such department before the charter went into effect, and who were retained, under section 127, "under the same conditions" which prevailed before such retention.

2. SAME.
    Brooklyn City Charter, tit. 22, § 29, prohibiting the removal of veteran soldiers, "except for good cause shown, after a hearing," precludes a removal on the statements of unsworn witnesses, without notice of the charges preferred, and without an opportunity to defend.

Certiorari, on the relation of Adolph H. Schumann, against James McCartney, as commissioner of street cleaning of the city of New York,

commanding defendant to certify and return to the office of the clerk of Kings county all the proceedings in regard to relator's dismissal from employment in the street-cleaning department of New York City. Relator restored.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Thomas F. Magner, for relator.

William J. Carr (Almet F. Jenks, on brief), for respondent.

WOODWARD, J.    The relator is a veteran of the war of the Rebellion, and in 1894, having passed the civil service examination required by law, he was appointed an inspector of street cleaning by the then commissioner of city works of the city of Brooklyn, continuing in such position until the absorption of the city of Brooklyn into the Greater New York, on the 1st day of January, 1898, when, by virtue of the provisions of chapter 378 of the Laws of 1897, he became an employé of the latter city.   On the 21st day of January, 1898, the deputy commissioner of street cleaning in the borough of Brooklyn requested the relator to resign his position, which the relator refused to do, setting up his right to retain his position under the provisions of the law in relation to veterans of the war of the Rebellion.   Subsequently, and on the 31st day of January, 1898, the relator was informed by the same deputy commissioner that he had been transferred to the department of street cleaning, with the rank of section foreman, at a salary of $1,000 per annum, or $200 per year less than he had been receiving while in the employ of the city of Brooklyn.   He remained employed in the new capacity at the reduced salary until the 1st of March, when he was transferred to a new and enlarged district, embracing 63 miles of street.   On the 8th day of March, he received a notice of his suspension from duty; and on the 9th day of March, at 11 o'clock a. m., he received a notice to appear before the commissioner of street cleaning at 3 o'clock in the afternoon of that day, for a hearing.   He was not notified of the charges against him, nor was he given any time for preparation.   He appeared before the commissioner, and was sent before a subordinate for trial, where he was for the first time confronted by the charge, and by two witnesses, who, without being sworn, were permitted to testify to the alleged facts constituting the charge of neglect of duty.   The relator was given no adequate opportunity to meet the charge brought against him, and the commissioner concluded that:

"Upon evidence satisfactory to me, that you are guilty of neglect of duty and disobedience of orders, in that you failed to cause your section to be properly cleaned, and in submitting a false report in stating that certain streets were cleaned, while in fact they were not."

Upon this finding, the relator was dismissed from the service of the city of New York; and the matter comes before this court upon a writ of certiorari, to determine whether the commissioner has acted within the law in thus dismissing the relator.

There is no dispute that the relator was a veteran of the war of the Rebellion, and that he was holding office in the city of Brooklyn prior

to the 1st day of January, 1898, under provisions of law which forbade his removal from office "except for good cause shown, after a hearing" (section 29, tit. 22, Charter of City of Brooklyn), or "except for incompetency or misconduct shown, after a hearing, upon due notice, upon the charge made, and with the right to such employé or appointee to a review by writ of certiorari; a refusal to allow the preference provided for in this act to any honorably discharged Union soldier, sailor, or marine, or a reduction of his compensation intended to bring about a resignation, shall be deemed a misdemeanor, and such honorably discharged soldier, sailor or marine shall have a right of action therefor in any court of competent jurisdiction for damages, and also a remedy by mandamus for righting the wrong. The burden of proving incompetency or misconduct shall be upon the party alleging the same." Laws 1896, c. 821. By the provisions of section 127 of the Greater New York Charter, "all veterans either of the army or navy or the volunteer fire departments, now in the service of either of the municipal and public corporations hereby consolidated, who are now entitled by law to serve during good behavior, or who cannot under existing law be removed except for cause, shall be retained in like positions and under the same conditions by the corporation constituted by this act, to serve under such titles and in such way as the head of the appropriate department or the mayor may direct." It is evident, therefore, that the relator entered the employ of Greater New York, by operation of law, "under the same conditions" by which he was surrounded in his employment by the former city of Brooklyn; and it was not within the power of the commissioner of the street-cleaning department of the Greater New York, acting under the provisions of section 537 of the Greater New York Charter, to arbitrarily remove him from his position, or to do so after a hearing which was entirely lacking in the elements of a judicial investigation of the charge made against the relator. The Greater New York Charter, like all other statutes, is to be considered in its entirety, and it is the duty of the courts to give effect to all of its provisions where such a result is possible. Section 537 gives the commissioner power, "in his discretion, on evidence satisfactory to him," to remove any of the members of the uniformed force of street cleaners; but this power relates to the uniformed force which "shall be appointed by the commissioner of street cleaning" (section 536), and not to those who are transferred by operation of law, and who were, at the time of the transfer, within the protection of the laws made for the purpose of continuing veterans of the war of the Rebellion in civil positions. Section 127 of the Greater New York Charter was designed to preserve the rights secured by special and general statutes to the veterans of the war of the Rebellion, who were in the employ of any of the municipalities making up the Greater New York. They were to "be retained in like positions and under the same conditions" by the new corporation. It was one of the compromises necessary to bring about the consolidation, and section 537 is to be construed as modified by the provisions of section 127, and the commissioner of the street-cleaning department gained no new powers over the relator by reason of his transfer.

As was said by Mr. Justice Willard Bartlett, in People v. Coler, 31

App. Div. 523, 52 N. Y. Supp. 197, in considering this same provision of law:

"At the time when this provision took effect, the relator, an honorably discharged sailor of the late war of·the Rebellion, was in the service of the city of Brooklyn, as collector of fees at Wallabout Market. If he could not, under the law as it then existed, be removed except for cause, he became entitled, upon the consolidation of the several municipalities, to be retained in a position similar to that which he then occupied, to serve under such title and in such manner as the comptroller or mayor might prescribe."

This view of the law gives effect to both provisions. It enables the commissioner to discharge such members of the uniformed force as he shall have appointed, following the reasoning laid down in People v. Waring, 1 App. Div. 594, 37 N. Y. Supp. 478, while preserving to those who were in office in the city of Brooklyn, under the protection of the veteran acts, all of the rights which they had at the time of the consolidation, and which were guarantied to them by the provisions of section 127. The language of the statute is, not only that they shall "be retained in like positions," but they shall be "under the same conditions." Veterans of the war of the Rebellion, employed by the city of Brooklyn, could not be removed "except for good cause shown, after a hearing had," or "except for incompetency or misconduct shown after a hearing upon due notice, upon the charge made," and with "the burden of proving incompetency or misconduct," "upon the party alleging the same." Laws 1896, c. 821.

There was no hearing, in any judicial sense, in the case now under consideration. The relator, as was said in People v. Martin, 152 N. Y. 311, 46 N. E. 484, "ignorant of his rights, without counsel or witnesses, stood before his superior officer and judge virtually helpless and mute, because he had not been given the time and opportunity to defend that the law prescribes both for the guilty and the innocent." This was peculiarly the case with the relator. He did not receive his notice of a hearing until 11 o'clock of the day on which he was requested to appear at 3 o'clock in the afternoon, and he was given no opportunity to have counsel or to make any preparation. Indeed, it is not pretended, on the part of the respondent, that any judicial inquiry was entered into; and he evidently relies upon the provisions of section 537 of the charter of the Greater New York, for he recites in his order of dismissal, "upon evidence satisfactory to me, that you are guilty of neglect of duty," which is substantially the language of the statute in the section referred to above; and, in the brief of counsel for the respondent, we are cited to this provision of the law. This, as we have already seen, is not sufficient. The relator cannot be deprived of his position upon evidence satisfactory to the commissioner, unless that evidence is procured in the course of a judicial investigation, where the relator has been informed of the charge against him, and has had an opportunity of examining the witnesses against him, and of presenting evidence in his own behalf. On the hearing at which the "evidence satisfactory" to the commissioner was elicited, the witnesses were not put under oath, and the entire proceeding was a mere mockery of justice.

"The relator," say the court in People v. Board of Police Commissioners, 155 N. Y. 40, 49 N. E. 257, "was not subject to removal except for some legal

cause, to be ascertained and adjudged, as matter of fact, upon a hearing. This contemplates a judicial investigation, in which there must, at least, be some legal responsibility for perjury, or some protection to the accused against falsehood. The issue to be determined was one of fact. The proceeding was judicial in character, and hence the tribunal before which the investigation was had could not dispense with the usual form of procedure by acting upon statements not given under the responsibility of an oath. When the court proceeded to judgment, without the observance of such an essential prerequisite to every judicial inquiry, the determination was not judicial in character, or such as the statute contemplates. While some latitude is allowed with respect to the rules of evidence, yet to remove a party from a public office, upon a charge involving a question of fact, without even swearing the witnesses, is to abandon the fundamental form of judicial action. A determination thus made is not the result of a trial or a hearing, in any proper sense, and hence the relator was removed from office without such a trial or hearing as the law contemplates. * * * When a party is protected in the enjoyment of a public office or employment from removal except for cause, to be ascertained and adjudged upon a hearing of a judicial nature, and it appears that he has been removed without any proof of the necessary facts upon oath, the determination, if not absolutely without jurisdiction, is clearly erroneous, as matter of law."

If, then, the relator was under the protection of the veteran acts,— and that he was does not seem to be open to dispute,—the action of the commissioner in dismissing him from the service of the Greater New York, without a hearing in which the forms of a judicial investigation were observed, was without authority, and he is clearly entitled to the relief asked for in the present proceeding. The determination of the commissioner of streets should be reversed, and the relator should be restored to "a like position, and under the same conditions," as those which prevailed at the time of the consolidation of New York and Brooklyn and the other municipalities which go to make up the Greater New York.

Determination annulled and relator reinstated, with $50 costs and disbursements. All concur.