## Ex Parte Lucille Hejda.

No. 5134.   Decided February 6, 1929.
(13 S. W., 2d Series, 57.)

*V. E. Shurtliff,* for relator.

Due process of law in the prosecution of contempt, except of that committed in open Court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. This includes the assistance of counsel if desired and the right to call witnesses to give testimony relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed. Cook v. United States, 267 U. S., 535.

MR. JUDGE NICKELS delivered the opinion of the Commission of Appeals, Section A.

### STATEMENT OF THE CASE.

September 12, 1925, the State of Texas, acting by its District Attorney, filed petition in the District Court, Stephens County, Ninetieth Judicial District, in which Lucille Hejda is named as defendant. Exclusive of formal parts, the petition's averments are:

"That the defendant * * * on or prior to the 22nd day of August, A. D. 1925, at the Hampton Hotel, on E. Walker Street, Breckenridge, in Stephens County, in the State of Texas, kept at said place and sold to F. T. Cullen and diverse other persons spirituous, vinous and malt liquors capable of producing intoxication (or containing in excess of one per cent of alcohol by volume) in violation of the laws of the State of Texas."

The prayer was: (a) "For the immediate granting * * * of a temporary writ of injunction restraining and enjoining said defendant and his agents, servants and employees from unlawfully possessing or selling any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, and any such liquors containing in excess of one per cent of alcohol by volume anywhere in the State of Texas, and from having transported to or delivered to him unlawfully, and from unlawfully receiving from any person or persons, common or other carrier, and from bringing into said place of business any intoxicating liquor in violation of the law." (b) For "perpetuation of such injunction upon final hearing." (c) For costs and general relief.

On that day (September 12, 1925) the District Judge made order in which "plaintiff's application for temporary injunction" was "granted as prayed for" and in which the clerk was directed to "issue temporary injunction, enjoining and restraining the defendant here-

in, as prayed for, until the further orders of this court herein made and entered."

September 17, 1925, the clerk issued a paper reciting filing of the petition and its contents, reciting entry and contents of the order and thereupon declaring:

"You and your agents, servants and employes are hereby commanded to desist and refrain from unlawfully selling any spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication and any such liquors containing in excess of one per cent of alcohol by volume anywhere in the State of Texas, and from having transported or delivered to him unlawfully and from unlawfully receiving from any person or common or other carrier, and from bringing into said place of business any intoxicating liquors for purposes of sale until the further order of said 90th District Court to be holden within and for the County of Stephens at the Courthouse thereof, in Breckenridge, on the first Monday in November, A. D. 1925, the same being the 2nd day of November, A. D. 1925, when and where this writ is returnable."

A "true copy" of the "writ" was regularly delivered to Lucille Hejda on September 18, 1925.

October 28, 1925, Lucille Hejda filed answer,—consisting of a general demurrer and a general denial.

June 13, 1928, the State of Texas, by its District Attorney, filed in the cause a pleading in which issuance of the "writ" (above described) and its purport were recited and in which these charges are made:

"The said Lucille Hejda has heretofore refused and does now wholly fail and refuse to obey the command of said writ, but on the contrary, continuously since the service of said injunction and more especially within the past sixty days, the said Lucille Hejda has continued to sell whiskey, spirituous, vinous and malt liquors and medicated bitters capable of producing intoxication and has continued to have transported and delivered to her unlawfully and has unlawfully received and has had brought to her place of business, the said Hampton Hotel * * * intoxicating liquors in violation of the laws and has continued to unlawfully possess for the purpose of sale spirituous, vinous and malt and intoxicating liquors and has permitted her agents, servants and employes to so receive, possess and unlawfully sell such liquors in violation of the said writ of injunction."

On that day the District Judge "examined" that pleading and ordered the clerk to "issue an order citing the said Lucille Hejda to appear before me in the 90th District Court, in the Courthouse in Stephens County, Texas, at Breckenridge, on the 20th day of June, A. D. 1928, at nine o'clock, A.M., to show cause, if any, why she should not be adjudged in contempt of this Court, and at which hearing full inquiry will be made as to whether she should be punished by the Court for the violation of the writ of injunction heretofore issued by this Court."

July 11, 1928, the clerk, without further order, issued "writ of attachment" commanding the sheriff "to take the body of Lucille Hejda and bring her before the Honorable District Court of Stephens County, at the Courthouse in Breckenridge, Texas, instanter, then and there to answer the State of Texas in a charge of contempt of court in the cause of The State of Texas v. Lucille Hejda, No. 6667 pending before said Court." Before dawn on August 3, 1928, Lucille Hejda was arrested and placed in jail and under authority (real or supposed) of the "writ of attachment" was brought into court during the day and thereupon (on the same day) judgment was rendered ordering that she "shall be confined in the jail of Stephens County, Texas, for six months and is hereby fined in the sum of Five Hundred Dollars."

The statement of the case as made so far is based alone upon properly authenticated transcripts of the record in the Ninetieth District Court. Insofar as deemed proper reference to other matters will be made in course of the opinion.

Upon commitment issued, the sheriff imprisoned the relator and had her so confined at the time when her petition was filed in the Supreme Court, August 6, 1928. Order was made on that day requiring issuance of the writ of *habeas corpus,* returnable October 1, 1928, and requiring her admission to bail pending further orders of the Supreme Court.

The return made presents the judgment of August 3, 1928, and commitment thereon as the authority for custody.

OPINION.

1. Due process of law ordinarily includes: (a) Hearing before condemnation; (b) accordance of reasonable opportunity to prepare for the hearing. Mandate for reasonableness of opportunity may not be attenuated to mere formal observance by judicial action (so-called), Ex Parte Ratliff, 117 Texas, 325, 3 S. W. (2d), 406,

cases therein cited, Moore v. Dempsey, 261 U. S., 86, 43 Sup. Ct., 555, 67 L. Ed., 543,—or by legislative fiat expressed or implied. Roller v. Holly, 176 U. S., 398, 20 Sup. Ct., 458, 44 L. Ed., 503; Belligham, B. B. C. R. Co. v. New Whatcom, 172 U. S., 314, 318, 19 Sup. Ct., 205, 43 L. Ed., 460; United States v. Fisher, 222 U. S., 209, 32 Sup. Ct., 37, 56 L. Ed., 165; Ekern v. McGovern, 154 Wis., 279, 142 N. W., 632, 46 L. R. A. (N. S.), 796, 841. That line which bounds reasonableness may not be definitely marked out in its entire range when the question is one of law any more than it can be platted when the question is one of fact. One point at a time must be fixed; but illustration of some as fixed is appropriate. Roller v. Holly involved validity of application of a (Texas) statutory provision of five-days' notice for non-residents to a defendant who was so situated as that he could not have reached the place of trial until the day before trial; due process was lacking, it was held, and the court expressed its thought that in a serious matter one should not be required to answer the first day of practical opportunity or even on the next day. In United States v. Fisher it was held that a few hours' notice to an attorney for Creek Freedmen of a motion to strike names from the rolls was too short. Ekern v. McGovern, supra, in respect to notice in a governor's proceeding to remove from office for cause, holds that "nothing short of a full day would do under ordinary circumstances." In relation to such proceedings in New York it has been held that "four hours' notice is no notice at all." ·(People ex rel. Schumann v. McCartney, 34 App. Div., 19, 53 N. Y. Supp., 1047) but that two-days' notice may be sufficient (People ex rel. Donovan v. Fire Commrs., 77 N. Y., 153; People ex rel. Jordan v. Martin, 152 N. Y., 311, 46 N. E., 484.)

2. The record summarized in statement of the case above does not exhibit process of any kind served upon Lucille Hejda after filing of the State's motion on June 13, 1928, save alone the "writ of attachment." Nor does it disclose actual notice on her part of that motion or its contents or of entry of the "show cause" order. In the judgment there is no recital of service. Voluntary appearance is negatived; for while the judgment (of August 3rd) declares her presence, the record makes it plain that Hejda was taken into court and kept there by the sheriff in virtue of the "writ of attachment." In the judgment there is recital of presence of the District Attorney. The recitals mentioned probably mean that which is

declared in the maxim *expressio unius est exclusio alterius,* and, hence, that Lucille Hejda's counsel was not present.

Evidence showing that arrest under the "writ of attachment" constituted the only service had or notice given and that the prisoner had no aid of counsel or opportunity to procure such aid is not in contradiction of or inconsistent with the record of the District Court. We do not mean to imply that it could not be considered if contradictory of or inconsistent with that record,—whether in such event it could be considered and for what purposes are now immaterial questions; what we mean to say is that the showing here made of lack of notice other than arrest under the "warrant" before dawn on August 3, 1928, and putting of the prisoner to trial over the protest of herself and of her counsel (generally employed) who, without fault, was in a distant city and unable to reach the place of trial before pronouncement of judgment, is appropriately provable under any view of the law. Cf.,—Ex parte Cain, 86 Tex. Cr., 509, 217 S. W., 386; Moore v. Dempsey, supra; Frank v. Mangum, 237 U. S., 309, 331, 35 Sup. Ct., 582, 59 L. Ed., 969; Ex Parter Mayfield, 141 U. S., 107, 116, 11 Sup. Ct., 939, 35 L. Ed., 635; Ex Parte Cuddy, 131 U. S., 280, 9 Sup. Ct., 703, 33 L. Ed., 154.

3. We indulge against relator *arguendo* presumptions that the State's pleading was sufficient to invoke jurisdiction, that the "writ of attachment" was in form and substance sufficient, that execution of the "writ of attachment" was sufficient as a means of notice and that "evidence" upon which (as shown in the record) the court acted tended to prove anything relevant. But, we hold, time and circumstances intervening receipt of whatever notice was given and pronouncement of judgment did not constitute or permit reasonable opportunity for preparation or presentation of such defenses as relator had,—and she claims to have had several of conclusive effect. Hence the judgment of August 3, 1928, and all things done and proposed to be done in supposed virtue thereof are in defiance of the requirement of due process.

Relator is entitled to final discharge, and we recommend such judgment as will provide that relief.

· The opinion of the Commission of Appeals is adopted and the relator discharged from custody.

*C. M. Cureton,* Chief Justice.