[No B036486. Second Dist., Div. Four. Mar. 7, 1989.]

FRANK LUCERO, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

James K. Hahn, City Attorney, Frederick N. Merkin and Leslie E. Brown, Assistant City Attorneys, for Defendants and Appellants.

Marr & Marchant, Cecil Marr and Diane Marchant for Plaintiff and Respondent.

## OPINION

GEORGE, J.—Defendants the City of Los Angeles and its chief of police, Daryl F. Gates, appeal from a judgment granting the petition of plaintiff Frank Lucero, a police officer employed by the City of Los Angeles, for a writ of mandate compelling defendants to nullify and revoke a December 22, 1987, order suspending plaintiff from his duties for 22 days without pay.

Defendants contend (1) they were relieved of the requirement of personal service on plaintiff of the notice of proposed disciplinary action by their receipt of a letter from plaintiff's physician requesting cessation of all contact between plaintiff and the police department; (2) even if the service on plaintiff by certified mail was ineffective, nullification or revocation of the suspension order was not required; and (3) the trial court erred in not ruling on defendants' objections to the judgment prior to entry thereof. Plaintiff in turn asks that we award him attorney's fees incurred in this appeal. For the reasons that follow, we reverse the judgment of the trial court and decline to award plaintiff attorney's fees.

### FACTUAL AND PROCEDURAL HISTORY

In his verified complaint, Sergeant Lucero alleged that in June of 1987, he was accused of "neglect of duty" consisting of his having "improperly advised two involved officers of an alleged racial conspiracy against them by supervision [sic] and failed to notify his watch commander or commanding officer of the alleged misconduct." On August 4, 1987, while off duty by reason of injury sustained during a traffic accident, Lucero, in the company of his "union representative," Sergeant Albino Hernandez, reported to his superiors in central traffic division and received a photocopy of the investigative materials which had been compiled as a result of the "neglect of duty" complaint. Lucero at that time declined a request that he provide a statement concerning the complaint, stating he would not be interviewed without the presence of an attorney. Lucero's superiors agreed to give him a reasonable period of time to secure the services of an attorney, but

telephonic inquiries with Lucero on August 5, 11, and 14, 1987, failed to establish a date when he would be available for interview with an attorney. During a subsequent inquiry on August 21, 1987, Lucero declined "on the advice of his psychiatrist" to be interviewed concerning the allegations, stating that a letter from his psychiatrist would be forthcoming. Lucero was advised at the time that, based upon his decision not to submit to an interview, the investigation would be adjudicated without his statement. Lucero acknowledged that he understood and stated, " '[t]hat's just the way it is going to have to be.' "

Not having received a letter from Lucero's psychiatrist, Lucero's superiors on August 28, 1987, sent him a certified letter, ordering him to (1) appear for interview on September 9, 1987, (2) produce a letter from a physician documenting his inability to be interviewed, or (3) face a charge of insubordination. On September 8, 1987, the police department received a letter from Leonard W. Kram, M.D., Lucero's personal physician and psychiatrist, indicating that Lucero was a patient of his and that "Lucero's emotional state has been aggravated by recent contacts with LAPD [Los Angeles Police Department]. Therefore, I request all contact with LAPD cease immediately." The police department's investigation thereupon concluded without input from Lucero.

On September 11, 1987, the captain in charge of central traffic division prepared a "notice of proposed disciplinary action," informing Lucero that the captain was proposing to Chief Gates that the "neglect of duty" complaint be sustained. This notice, which gave Lucero the opportunity to respond orally or in writing by September 22, 1987, was mailed to his residence and received by him on September 15, 1987. On September 22, 1987, Lucero submitted a written response denying the allegation of misconduct.

On November 19, 1987, Chief Gates signed an order suspending Lucero for 22 days without pay, commencing December 22, 1987, and specifying that "In January 1987, at Central Traffic Division, you, while on duty, after becoming aware of possible misconduct, failed to take appropriate action."

Section 202 of the Charter of the City of Los Angeles provides that "[t]he right of an officer or employee of the police department to hold his office or position and to the compensation attached to such office or position is . . . a substantial property right of which he shall not be deprived arbitrarily or summarily, nor otherwise than as herein in this section provided." (Subd. (1).) Pursuant to subdivision (2)(b) of section 202, the chief of police may suspend an officer with loss of pay for a period not to exceed 30 days subject to the right of the officer to a hearing before a board of rights, provided the

suspended officer requests such a hearing or the chief orders that a hearing be held. Notice of such suspension may be served "either by handing the officer . . . a copy thereof personally or by forwarding such copy by registered mail to his last known address of record with the police department if after due diligence he cannot be found." (Subd. (4).) The suspended officer's right to a hearing before a board of rights is conditioned, by the charter provision, upon his filing a written application therefor with the chief of police within five days of service if personal service was effected, or within ten days if service by registered mail was effected. (Subd. (5).)

Because of the aforementioned letter from Lucero's physician, no attempt was made to personally serve Lucero with notice of his suspension on Friday, December 11, 1987, when the complaint and order of suspension were filed with the board of police commissioners, pursuant to subdivision (3). Instead the notice was sent on that date by certified mail to Lucero's last known address on file with the police department, in accordance with the substituted service provisions of section 202, subdivision (4). Lucero's declaration indicates that the notice was postmarked December 13, a Sunday, and that he changed his residence on that date from the foregoing address, located in the City of West Covina in Los Angeles County, to a new address in the City of Ontario in San Bernardino County. Lucero did not take any action to notify the police department of his change of address until Thursday, December 17,[1] when he mailed to the personnel division of the police department a notice which was received by that division on December 21 and by the central traffic division on the following day.

Lucero's declaration indicates that in response to a notice he received from the post office on Saturday, December 26, indicating that there was a certified letter which he could retrieve during regular business hours Monday through Friday, he picked up the complaint and notice of suspension at 4:50 p.m. on Monday, December 28, at the post office. When Sergeant Hernandez telephoned the police department on the following day requesting a board of rights to hear an appeal from the suspension, Hernandez was advised that the 10-day period provided under section 202 for filing such an application had expired and that Lucero's request was untimely. At no time did Lucero file a written application for a board of rights hearing as required by section 202.

---

[1] Section 1.20 of the Manual of the Los Angeles Police Department was before the trial court and provides that a change of address and telephone number form "shall be completed within twenty-four hours after a change of address or telephone number . . . . If an employee is not scheduled to work a tour of duty within twenty-four hours following an incident requiring the completion of the Form 1.20, he shall notify his watch commander. The watch commander shall ensure the prompt completion of the Form 1.20."

In his petition for writ of mandate, Lucero sought to have the suspension order overturned on the ground that the police department erroneously had served him by mail rather than personally.

The trial court ruled: "Petition for Peremptory Writ of Mandate is granted. Court finds no showing of due diligence in attempting to serve [Lucero]; therefore service by mail is ineffectual." Judgment for Lucero was rendered, providing in part that "a peremptory writ of mandate shall issue, directed to [defendants] compelling them . . . to (1) nullify and revoke the order of suspension which was effective on December 22, 1987; (2) reimburse [Lucero] for any and all loss of pay or benefits incurred as a result of the order of suspension; (3) pay to [Lucero] interest at the legal rate on all monies withheld from him pursuant to the suspension order computed from the day the monies were withheld until the day the pay is restored to [Lucero]; and (4) remove the suspension order and all reference to it from [Lucero's] personnel file and from any other file used for personnel purposes."

Defendants timely appealed.

## DISCUSSION

## I

*Whether Service by Mail of the Disciplinary Complaint and Order of Suspension, in Lieu of Personal Service, Was Proper Under the Circumstances*

Defendants first contend that "under the circumstances created and controlled by [Lucero], [defendants] were relieved of the personal service/due diligence requirement of Charter section 202(4)."

As we have previously noted, section 202 of the Charter of the City of Los Angeles required that the notice suspending Lucero be served "either by handing the officer . . . a copy thereof personally or by forwarding such copy by registered mail to his last known address of record with the Police Department if after due diligence he cannot be found." (Subd. (4).)

Specifically, the issue before us is whether the police department's receipt of the letter from Lucero's physician, requesting cessation of all contact between Lucero and the department, relieved it of the requirement

of personal service and justified resort to the alternate method of service by registered or certified mail.[2]

Our research has disclosed two reported decisions discussing charter section 202's due diligence requirement for alternate service when personal service cannot be effected upon a Los Angeles police officer facing disciplinary proceedings. (*Redding* v. *City of Los Angeles* (1947) 81 Cal.App.2d 888, 899-901 [185 P.2d 430]; *Irwin* v. *City of Los Angeles* (1935) 3 Cal.App.2d 495, 497 [39 P.2d 851].) In both cases, notice to the officer by means other than personal service was allowed only because, with due diligence, the officer could not be found.

In the *Irwin* case, personal service of notice of suspension under City of Los Angeles Charter section 202 was attempted at the officer's last known residence. The officer was absent but his wife said he "had gone to his father's place at Lancaster, California, . . . that she could not give the address but she would see [the officer] in two or three days and give him the papers. The order was thereupon left with the wife." (*Irwin* v. *City of Los Angeles, supra,* 3 Cal.App.2d at p. 497.) At the time in question, section 202 provided that in lieu of personal service, service could be effected " 'by leaving a copy thereof at his last-known place of residence *if he cannot be found*.' " (*Ibid.,* italics added.)

Because the officer in the *Irwin* case went to police headquarters one or two days after the notice was left at his residence, and while there spoke with an assistant chief, the trial court found "that 'it is not true that he (petitioner) could not be found for the purpose of serving said statement upon him and on the contrary he could have been found for that purpose in the City of Los Angeles within a day or two as well as on other occasions *after* said attempt to serve him with said statement was made . . . .' " (3 Cal.App.2d at p. 497, italics in the original.)

Reversing the trial court, this court held: "The service was complete under the charter if petitioner could not be found on October 29, 1930, and service by leaving a copy at his residence was then made. Subsequent appearance at police headquarters by the discharged employee would in no way invalidate the service legally made on a prior date, but we may observe it removed any doubt from the employee's mind as to the fact of his discharge." (3 Cal.App.2d at p. 497.)

---

[2] In the context of the issues involved in the present appeal, we treat the service upon Lucero by certified mail as the equivalent of service by registered mail. (Cf. Civ. Code, § 17; Code Civ. Proc., § 11; *Hankla* v. *Governing Bd.* (1975) 46 Cal.App.3d 644, 654 [120 Cal.Rptr. 827].)

Faced with the situation of an injured officer whose psychiatrist had communicated that "Lucero's emotional state has been aggravated by recent contacts with LAPD," and that all further "contact" with the police department should "cease immediately," it was reasonable for the department to resort to the alternate method of service by certified mail, which involved minimal "contact" with Lucero as compared to the direct confrontation involved in personal service. A conscious disregard by the police department of the request of Lucero's psychiatrist might have aggravated Lucero's medical condition and invited legal action against defendants for alleged intentional or negligent infliction of emotional distress.

Although reasonable, serving Lucero by mail violated the terms of section 202, subdivision (4), of the charter and was therefore ineffectual. The sole excuse recognized by the charter for failure to effect personal service is inability to locate the officer using due diligence.

The charter provision, however, does not mandate nullification of the suspension order by reason of improper service (even though another irregularity, failure to file with the board of police commissioners within five days a statement that the accused officer has been served, may render the suspension order "void and of no effect"). (Subd. (3).) Improper service warrants nullification of the suspension order only if the officer was thereby prejudiced.

The prejudice alleged by Lucero was that he did not receive notice of the suspension until expiration of the 10-day period in which he could demand a board of rights hearing. It was Lucero's tardiness in notifying the department of his change of address, however, that caused the suspension notice to be sent to the West Covina address and then forwarded to the Ontario address, resulting in the delay in Lucero's receipt of that notice. Having received the "notice of proposed disciplinary action" by mail at his West Covina residence in September of 1987, Lucero must bear the responsibility for having failed to promptly anticipate further attempts by the police department to communicate with him by mail, especially in light of his psychiatrist's request that "all contact with LAPD cease immediately."

Because the delay in service was caused by Lucero's own actions and the police department acted reasonably under the circumstances created by the officer, we conclude defendants' failure to comply with the requirements for service set forth in the charter did not invalidate the suspension order.

## II

*Whether Any Irregularity in the Suspension Procedures Followed by the Police Department Requires Nullification of the Suspension and Bars All Further Attempts at Disciplinary Action*

Section 202 of the charter requires the chief of police to file with the board of police commissioners a verified written complaint upon which the order of suspension is based, together with a statement that the complaint and order of suspension were served upon the accused officer. These documents must be filed by the chief "within five (5) days after such . . . order of suspension is served" on the officer. (Subd. (3).)

The chief of police filed these documents with the board of police commissioners on Friday, December 11, 1987. ■ Lucero contends that the copies of the complaint and order of suspension he received were postmarked Sunday, December 13, as alleged in his declaration, that the foregoing documents therefore were not filed within five days *after* he was served, and that his suspension was thus nullified and further disciplinary action was barred by the following provision in charter section 202: "In the event that the Chief of Police fails to file the aforesaid statement and complaint within the five (5) day period heretofore prescribed, the aforesaid order of temporary relief from duty or order of suspension shall thereupon become void and of no effect and shall be automatically revoked, and the accused officer or employee restored to duty with the department without loss of pay and without prejudice, the same as if no order of relief from duty or order of suspension had been made." (Subd. (3).)

Defendants argue that this five-day provision is merely a maximum period, and that filing the documents in question *prior* to service of the order meets the requirements of the charter. This construction would be more plausible, however, if the statement which the chief of police must file did not also include proof of service on the officer.

Significantly, a "certificate of service," appearing at the end of the suspension order submitted to the trial court by Lucero and alluded to in his verified petition, establishes that Margie Grundy, a "member" of the Los Angeles Police Department, served the complaint and order of suspension on Lucero at 11 a.m. on Friday, December 11, 1987, by "forwarding a copy thereof by registered mail addressed to him at his last known address" in West Covina. Assuming the correctness of Lucero's assertion that the envelope bore a postmark of Sunday, December 13, and that he changed his residence that same day, service by mail was nonetheless effected on Friday, December 11, the date which the foregoing certificate (as well as a further

declaration filed by defendants) without contradiction establish as the date the documents were mailed to him.

Section 4.186 of the Administrative Code of the City of Los Angeles recites verbatim the language of charter section 202 except for the addition of references to the fire department, paralleling those to the police department and its personnel. Section 1.8 of the aforementioned Administrative Code provides in pertinent part: "Service by mail shall be deemed to have been completed at the time of deposit in the post office." Section 1.9 thereof provides: "Proof of giving any notice may be made by the certificate of any officer or employee of this City . . . , which shows service in conformity with this Code or other provisions of law applicable to the subject matter concerned."

Even were we to conclude that the police department failed to follow required procedures by filing the complaint and order of suspension with the board of police commissioners two days prematurely, this irregularity would not mandate that all further disciplinary action arising from the alleged January 1987 misconduct be barred.

Premature (as opposed to delayed) filing with the board constitutes at most a technical violation which does not void the order of suspension, let alone immunize the officer from further disciplinary proceedings, because under charter section 202 the officer's exercise of his right to request a hearing is not in any way affected by the date of such filing. The request for a hearing must be made within 10 days of service by mail on the officer (or within 5 days of personal service) without reference to the date the documents were filed with the board. (Subd. (5).)

We note defendants urge that "[a]lthough, technically, [they] should be allowed to uphold the suspension without a hearing on the appeal since [Lucero] did not comply with the 10 day appeal rule under Charter § 202(5) and, thereby, actually waived his right of appeal," "the most equitable course of action for resolution of this dispute" would be for defendants to "be allowed to revive the order of suspension by re-serving Lucero in the proper manner."

We agree. Under the charter provision, if a suspended officer "fails to so apply for such hearing within the period prescribed, he shall be deemed to have waived such hearing and such suspension shall remain effective, *unless the Chief of Police require that a hearing be had* . . . ." (Subd. (2)(b), italics added.) Because the complaint was filed within one year of the alleged misconduct, defendants have discretion to proceed further with the disciplinary proceedings and specifically to offer Lucero a hearing notwithstand-

ing any untimeliness on his part in filing a request therefor. (Subds. (1) and (2)(b).)

In his verified complaint, Lucero admits having been advised in June 1987 of the alleged misconduct, having received a copy of the investigative materials on August 4, 1987, and having on that occasion and subsequent occasions declined the opportunity to provide a statement to his superiors. On September 15, 1987, Lucero received in the mail a "notice of proposed disciplinary action" informing him that the captain in charge of his assigned division was proposing to Chief Gates that the "neglect of duty" complaint be sustained, and advising Lucero that he could respond orally or in writing by September 22, 1987. On the latter date, Lucero submitted a written response denying the allegation of misconduct.

Thus, Lucero, at an early stage of the proceedings, was put on notice of the nature of the disciplinary accusations and in fact has had an opportunity to respond thereto. Under these circumstances, and because Lucero's own actions were largely responsible for his late receipt of the complaint and notice of suspension, it is not unfair to require that Lucero face a resumption of disciplinary proceedings upon being re-served and afforded the opportunity to file a timely written application for a board of rights hearing, as offered by defendants. On the other hand, it would be manifestly unfair under the foregoing circumstances to bar defendants permanently from proceeding with all disciplinary proceedings against Lucero based on the allegation of misconduct occurring in January of 1987.

In view of the result we reach, we need not and do not discuss defendants' contention that the trial court erred in not ruling on defendants' objections to the judgment prior to entry thereof and decline Lucero's request that we award him attorney's fees incurred in this appeal.

### DISPOSITION

The judgment is reversed. The trial court is directed to deny the petition for writ of mandate upon being presented with proof that plaintiff-petitioner has been re-served and afforded an opportunity to timely request a board of rights hearing in accordance with the provisions of section 202, subdivisions

(2)(b), (4), and (5), of the Charter of the City of Los Angeles. Each side is to bear its own costs on appeal.

McClosky, Acting P. J., and Goertzen, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 17, 1989.