[Civ. No. 15858. Second Dist., Div. Two. Oct. 17, 1947.]

WILLIAM H. REDDING, Appellant, v. CITY OF LOS ANGELES et al., Respondents.

Morris Lavine and Wm. J. Clark for Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, George William Adams and John F. Feldmeier, Deputy City Attorneys, for Respondents.

MOORE, P. J.—Appeal from a judgment of dismissal pursuant to a favorable ruling on a general demurrer to appellant's petition for a writ of mandamus to compel respondents to restore him to his position as a member of the police force of Los Angeles.

### CONTENTS OF APPELLANT'S PLEADING

The pleading alleges that petitioner has been an officer of the police force of which he became a member on April 1, 1925; that he was continuously such officer until September 6, 1942, when he was granted military leave to enlist in the United States Coast Guard. The city's charter provides for a police department for the purpose of enforcing its police, safety, and other regulations not in conflict with the general laws. By section 17 of such basic law every officer called into active service in the "armed forces" of the United States during time of war "shall during the period of such service, and for

a period of ninety days from and after his discharge or release from such service, be considered as being on leave of absence." Such leave shall be designated military leave, but its benefits shall not inure to any person who may be dishonorably discharged from the service to which he was called. "Every such officer or employee returning to the service of the city from military leave within the time hereinabove designated shall be restored to the same rank and position held by him at the time of the commencement of his military leave, or to such other rank and position to which he would be . . . entitled under the provisions of section 125 of this charter* . . . it being the intent of this provision to provide for the reemployment of persons absent on account of military leave without prejudice on account of their absence . . . during the period of such leave."

Appropriate allegations declare the existence of war between the United States and Japan, the President's declaration of the national emergency, its present existence and Japan's surrender, and the necessity for the government to transport food, clothing, medicine, arms, ammunition, all war materiel and soldiers from the Pacific Coast and other places to points at which they were required. To accomplish such ends the merchant marine enrolled such available men as had enjoyed experience in shipping, of whom appellant was one, having served in the Navy for three years. Such experience rendered his services desirable in the merchant marine whereby he could better promote peace and safety for the citizens of the United States and the city of Los Angeles than by his service in any other capacity.

Petitioner was disenrolled from the Coast Guard on December 9, 1942, and enrolled in the merchant marine with which he was continuously employed until March 29, 1946. Upon his release he received from the administrator of the War Shipping Administration a certificate pursuant to Public Law 87 that he had completed a period of substantially continuous service in the merchant marine since January 9, 1943. It certified that petitioner is eligible to be relieved from any further consideration for classification under the Selective Service System.

While petitioner was serving in the merchant marine,

---

*This section provides for the manner and order in which persons shall be suspended and restored by the board of Civil Service Commissioners. Suspension for personal delinquency and restoration "shall be based upon seniority as hereinafter provided."

August 3, 1943, defendant Chief of Police, C. B. Horrall, accused petitioner of neglect of duty in that having been granted military leave to enter the Coast Guard Reserve and having been disenrolled therefrom December 9, 1942, he failed to return to active duty within the statutory limit of 90 days; that "no copy of the accusation had been served personally and, he had no knowledge of the hearing and was not represented." The defendants Eaton, Clark and Collins, acting as a Board of Rights, found petitioner guilty of the charges and recommended his removal from the department without prejudice. Thereupon the chief discharged appellant.

On February 7, 1946, and while petitioner was still serving in the merchant marine, he applied for a rehearing. His application was granted by the chief; a new Board of Rights was appointed, consisting of defendants Lawrence, Mesloh and Steed. At a hearing on February 27, 1946, petitioner personally appeared, represented by counsel. All witnesses called by both parties gave their testimony. In addition to the facts above recited the petition recites in detail petitioner's testimony of his service rendered on the two armed transports, the "Eugene Skinner" and the "Ball's Bluff"; of his transfer to the latter which operated in the south seas and Indian Ocean from December, 1944, to January, 1946; and of his entry into different ports where he reported to the Navy, and his report to the police department immediately upon leaving the last named vessel. Defendant Reed, assistant chief of police, testified before the board that he had received a letter from petitioner in 1943 stating that he had been detained and that he would be unable to return, and requesting that the personnel bureau be informed. The testimony of Reed was in no respect contradicted except by Paul E. Harrison, a personnel officer, who denied having received any communication from petitioner after he was disenrolled from the Coast Guard, but stated that petitioner's wife telephoned the bureau after a letter had been sent advising petitioner of their information, and that he had advised her that although appellant had been disenrolled over 90 days, he might still return to his office. Harrison testified also that the police department had very few men with licenses from the maritime commission as qualified officers. Petitioner testified without contradiction that at all times within the 90-day period after December 9, 1942, he was unable to return to Los Angeles by reason of his duties and lack of transportation.

The board having found appellant guilty of neglect of duty, defendant Reed served upon him a notice of his removal from the police force. There was no evidence of neglect of duty other than his failure to return within 90 days after his disenrollment from the Coast Guard.

## VICE OF THE PLEADING

Respondents maintain that since appellant had no statutory right to a leave of absence the judgment of the Board of Rights and the action of the chief of police cannot be judicially reviewed, the complaint having alleged no abuse of discretion. In support of such contention it is suggested that section 202 of the charter confers upon the board the power to hear and determine a question of fact and that such power and the board's decision cannot be controlled by the courts.

It is a rule of wide acceptance that the writ of mandamus may not be employed to effect a desired decision contrary to the opinion of an official or a board vested with discretionary power. (*Bank of Italy* v. *Johnson*, 200 Cal. 1, 31 [251 P. 784].)

Since the charter confers discretionary power on the Board of Rights to determine whether a police officer has been guilty of neglect of duty, a complaint which alleges that such board heard the evidence offered by appellant and derived its decision therefrom does not state a cause of action for a writ to compel respondents to reverse their decision and to restore appellant to his position. (*Dierssen* v. *Civil Service Commission*, 43 Cal.App.2d 53, 59 [110 P.2d 513].)

Appellant by his petition asks the court to substitute its judgment for that of the Board of Rights which was by the charter given jurisdiction to determine whether a police officer has been guilty of neglect of duty. (Charter of Los Angeles, § 202.) Clearly this cannot be done in the absence of a showing of abuse of discretion by the administrative board. (*Shewbridge* v. *Police Commission*, 64 Cal.App.2d 787, 793 [149 P.2d 429].) Such showing is absent from the petition at bar. It discloses that appellant was granted military leave to enlist in the Coast Guard, a division of the armed forces, and that although he disenrolled therefrom in December, 1942, he did not present himself within 90 days from his release for restoration to police duty, but delayed doing so until January, 1946; that during the interim he was not with the armed forces but was a member of the merchant marine. In view of the alleged failure of appellant to return to his post within the time prescribed, of the language of section 17 of

the charter and of Public Law 87, it cannot with accuracy be said that the board abused its discretion.

The charter section merely allows a police officer to enter active service in the armed forces during wartime without detriment to his rank and seniority, provided that upon application within 90 days after his discharge he shall be restored to his position. Unless it can be said that his enrollment in the merchant marine and his service there was a compliance with section 17 and was as a matter of law the same as serving with the armed forces, the Board of Rights did not abuse its discretion in finding appellant guilty of neglect of duty in failing to return to his position within 90 days.

Public Law 87 (50 U.S.C.A.App. § 1472) was not violated by the board. That statute was enacted in June, 1943, for the purpose of making service in the merchant marine more attractive. Section 1472 designates three classes of persons to be affected, viz., those in (a) federal employment, (b) private employment, (c) state employment. The act distinctly provides that those who shall have left the employment of the federal government or of a private employer to serve in the merchant marine shall be restored to their positions of like seniority, status and pay. But no such provision was made for those who left the service of a state or of a political subdivision thereof. As to them it merely "declared it to be the sense of the Congress that such person should be restored to such position or to a position of like seniority, status and pay." To emphasize its meaning, subsection (b) provides that an employee of the federal government or of a private employer shall be considered as having been on furlough during his period of service in the merchant marine, but it does not make a similar requirement, as indeed it could not, for employees of a state or of its political subdivisions. In order to make such act binding upon the city of Los Angeles the adoption of an appropriate statute by the California Legislature was essential for the reason that the public policy of a state with respect to any matter can be expressed only by an act of its own lawmaking body. (11 Am.Jur. 814; 5 Cal.Jur. 670, 711; *In re Jones*, 56 Cal.App.2d 658, 660, 665 [133 P.2d 418]; *Allen* v. *Lelande*, 164 Cal. 56, 57 [127 P. 643]; *Twin City Pipe Line Co.*, v. *Harding Glass Co.*, 283 U.S. 353, 357 [51 S.Ct. 476, 75 L.Ed 1112, 83 A.L.R. 1168]; *Baker* v. *United States*, 27 F.2d 863, 875.) It is true that on August 8, 1946, section 1472 was further liberalized by the Congress for the benefit of employees

of the federal government and of private employers. However, no change was made for the benefit of those who had left state employment to serve in the merchant marine. (50 U.S. C.A.App., p. 308.)

■ Moreover, appellant having by due process of law forfeited his right to be on the police force, the chief of police is without authority to restore him. In order for him to regain membership in that organization he must pursue the route followed by any citizen who seeks to become a police officer.

■ Unless the charter provides for an exception to be made in the manner of employing one who has been discharged from his position in the city government the courts cannot supply such provision. (*Cronin* v. *Civil Service Commission,* 71 Cal.App. 633, 643 [236 P. 339].) ■ Courts may annul a statute which violates the fundamental law but they cannot declare as law that which they might conceive would be a wholesome statute. ■ Neither can an executive officer of Los Angeles in disregard of its civil service laws either restore an employee or appoint him to the position from which he, for cause, has been discharged. ■ Since the Board of Rights was vested with full power to determine the guilt of appellant and acted in conformance with a statutory procedure, the superior court had no power or authority to inquire whether the grounds upon which the discharge was based were well founded. Its power was confined to a determination of whether the board acted within the prescribed rules or violated the Constitution or general laws. (*Nider* v. *City Commission of Fresno,* 36 Cal.App.2d 14, 23 [97 P.2d 293]; *State ex rel. Beebe* v. *City of Seattle,* 159 Wash. 392 [293 P. 459, 460]; *State ex rel. Wolcott* v. *Boyington,* 110 Wash. 622 [188 P. 777, 779].) Nor can such power of that court be enlarged by its conclusion that the decision of the Board of Rights was incorrect. (*Shewbridge* v. *Police Commission,* 64 Cal.App.2d 787, 793 [149 P.2d 429].)

Conceding, arguendo, appellant's contention that the superior court had jurisdiction to order his restoration to the police force if the court should determine there was not sufficient cause for his removal, we are brought to a consideration of the act charged as constituting a neglect of duty. The allegation is that he obtained a military leave and used it to enroll in the Coast Guard; that after a brief service there he responded to what he deemed a call of his country to join the merchant marine, which was then in "urgent need" of men

experienced in shipping, to the end that he might better promote peace than by any other service. But there is no allegation that he could not have returned to the police force within 90 days after leaving the Coast Guard or that he applied for further leave in order to serve the merchant marine during the war. In disdain of the constituted authorities, in December, 1942, he embarked upon the "Eugene Skinner" from which three months later he notified the police department of his occupation and location. By his wilful action he placed himself in a position from which he could not return within the 90 days. Such conduct on the part of individuals in a law enforcement organization consisting of thousands of men will render its cohesion impossible and its constant efficacy for maintaining order and enforcing the law impracticable.

No person is above the law even though his violation thereof is prompted by a desire to serve the state at greater peril or more effectively than by a strict compliance, and notwithstanding that his act results in his rendering invaluable services. A police force constitutes the very first line of defense against insidious forces gnawing at the vitals of the republic and against the forces of terror and brigandage. Discipline within its ranks must be enforced and undivided allegiance to the public interest maintained even at the expense of freedom of action to serve in a larger field. (See *Doyle* v. *Kammeraad,* 310 Mich. 233 [17 N.W.2d 165, 168] ; *Coane* v. *Geary,* 298 Ill. App. 199 [18 N.E.2d 719, 722] ; *Perez* v. *Board of Police Commissioners of City of Los Angeles,* 78 Cal.App.2d 638 [178 P.2d 537].)

Appellant emphasizes the language of the Merchant Marine Act of 1936. (46 U.S.C.A., ch. 27, § 1101.) It is declared by the cited section that one of the reasons for fostering the merchant marine is that "it should be capable of serving as a naval and military auxiliary in time of war or national emergency." Such declaration of congressional sentiment is not binding upon the State of California as though it were the declaration of her public policy. The United States of America and the State of California are two separate sovereignties, each dominant within its own sphere. While this state gives its full support to the national government in the conduct of a war, it does not by virtue of that fact automatically adopt the public policy of the nation as its own. The above-quoted language is a part of subchapter I of the act

which is entitled "Declaration of Policy." Section 1101 is such subchapter in its entirety. It contains no provision which makes the merchant marine a part of the military or naval forces but is confined to the declaration that "it is necessary for the national defense and development of its foreign and domestic commerce that the United States shall have a merchant marine . . . capable of serving as a naval or military auxiliary in time of war. . . ." Not only does the quoted section fail to make members of the merchant, marine units of the armed forces, but no federal statute has been enacted to effect such purpose. Had it ever been the intention of Congress to confer upon the members of the merchant marine the same status as soldiers it is unlikely that it would have adopted section 1251 of the act which "encouraged the practice and procedure of collective bargaining . . . concerning rates of pay . . . or working conditions." Neither soldiers nor seagoing sailors nor even naval gun crews on merchant vessels were ever privileged to bargain collectively. They are an arm of the executive branch of the government and can make no demands upon the sovereignty. On the contrary, the merchant marine is a voluntary organization whose functions and services are exclusively civilian in nature and may be terminated at the will of an enrollee. (*In re Goodell,* 57 N.Y.S.2d 754.*) Some three years prior to the Goodell decision the attorney general of New York in an opinion requested by the New York Tunnel Authority held that employees of the merchant marine were not entitled to the benefits of that state's military law in the matter of leaves of absence to employees engaged in military duty. He stated that unless the merchant marine shall be made a part of the Navy or naval auxiliary, or shall be otherwise organized as a public military force, public employees engaged in the merchant marine are not entitled to a statutory leave of absence from their public positions. (Ops. Atty. Gen., New York, 1942, p. 395.)

The case of *Rapaport v. Civil Service Commission,* 134 Cal. App. 319 [25 P.2d 265], does not support appellant's contention that the accusation filed against him was insufficient. In that case an assistant physician was charged (1) with having accepted pay for his medical service and (2) neglect of duty in failing to visit two wards which had been assigned to him.

---

*"The decision discloses that the New York Legislature in 1944 so amended its military law as expressly to include employees of the merchant marine, thereby conserving their civil service tenure.

Appellant emphasizes the court's language that "the mere failure to perform a certain act with nothing more does not constitute either a neglect of duty in fact or in law." (P. 323.) But since there were no rules governing the conduct of assistant physicians or forbidding them to accept compensation from an employee of the hospital, no unlawful conduct was charged. There is no parallel in the cited case to that here under consideration. Appellant was accused of disregarding a specific charter inhibition and the charge was established.

### THE BOARD OF RIGHTS HAD JURISDICTION

Appellant contends that the Board of Rights did not acquire jurisdiction to try and determine his case. This contention is based upon the fact that the notice of the filing of the accusation was mailed to his "last known address"; that "no showing was made to the Board that due diligence had been exercised to find him"; that "his removal was summarily ordered without giving him a hearing"; that "his right to the office was a property right not to be taken from its possessor except in such manner and for such reasons as would justify taking property." The answer to such contentions is readily found in the provisions of the charter and in court decisions.

Section 202 of the charter provides that the right of an officer of the police department is a substantial property right; that he shall not be deprived of it arbitrarily; that he shall not be deprived of his office except for "good and sufficient cause shown upon a finding of *guilty* of the specific charge . . . assigned as cause . . . therefor after a full, fair, and impartial hearing before the Board of Rights." Subsection 4 of section 202 provides that "service of any notice, order or process mentioned in this section, other than service of subpoena, may be made either by handing the officer or employee a copy thereof personally or by forwarding such copy by registered mail to his last known address of record with the Police Department if after due diligence he cannot be found." ■■■ Appellant's complaint that no showing was made to the board of the exercise of due diligence to find him has a triple answer: (1) He states in his brief that "it was known to the Chief of Police and to members of the trial board that he was outside of the United States and therefore that a communication mailed to his last known address could not and would not reach him." The petition alleges that the chief of police and the trial board knew that appellant was then

in the employment of the merchant marine and was absent from the United States. Surely, appellant does not intend to imply that the Board of Rights, despite such knowledge, should, before trying him on the accusation, have required a search to be made throughout the city of Los Angeles! The law does not require the performance of an idle act. (2) But appellant deems himself to be aggrieved in that there was no need "for his removal while he was still out of the country." By such argument he indicates that he, rather than the chief of police or the Board of Rights, should determine whether he was neglecting his duty as a member of the police force by his serving in the merchant marine without express leave. No provision is to be found in the charter authorizing a police officer to exercise his own judgment in the matter of absenting himself from the city or in accepting other employment. The chief of police is the delegated official to make such decision, with no limitations other than the decision of a board of rights to be made after a "full, fair and impartial hearing." (3) Upon his request a rehearing was granted and a complete hearing was accorded with his counsel present.

That the first hearing was fair and impartial is conclusively established by the pleaded facts (1) that the chief of police deferred filing the accusation for seven months and 24 days after appellant left the Coast Guard; (2) that credible witnesses testified to, and appellant makes no attempt to conceal, the date of his disenrollment from the Coast Guard, his employment by the merchant marine and his absence in the far reaches of the Pacific Ocean. (3) His second hearing was fair and impartial in that it was granted as a matter of grace and all evidence offered by appellant was admitted and considered.

That appellant's right to his position as a member of the police force was a "substantial property right of which he shall not be deprived arbitrarily or summarily," (Charter of Los Angeles, § 202) is not questioned. The answer to such claim is found in the fact that he was accused, notified and fairly tried in conformance with the charter provisions. Such procedure fulfills all the requirements of due process of law. (*Wulzen* v. *Board of Supervisors,* 101 Cal. 15, 20 [35 P. 353, 40 Am.St.Rep. 17]; *Hurtado* v. *California,* 110 U.S. 516 [4 S.Ct. 111, 28 L.Ed. 232].) It was not intended either by the citizens of Los Angeles or by the Legislature that by the employment of a person as a member of the police force he

thereby becomes "owner" of the office in the same sense that he owns his horse or his home. (See *Boyd* v. *Pendegast,* 57 Cal.App. 504, 506 [207 P.713] ; 46 C.J. 932.) Not only may the law provide for the removal of an incumbent official but the latter's right to his office perishes with the order for his discharge when it results from an adherence to statutory procedure required for his dismissal for cause. (*In re Carter,* 141 Cal. 316, 319 [74 P. 997].) The philosophy underlying the theory of such property right is that the employee should have some reasonable permanancy of tenure to the end that his mind might be free from fear of losing his means of subsistence, enabling him to devote his life to the public service, and that in the enjoyment of such right the officer will be protected against summary removal. (*People ex rel. Schumann* v. *McCartney,* 34 App.Div. 19 [53 N.Y.S. 1047].) His protection against being arbitrarily removed from office is designed for the public good as well as for his own. The public is entitled to the increased efficiency which results from experience. No official or board may by summary order divest a city employee of his career office. (*Garvin* v. *Chambers,* 195 Cal. 212, 225 [232 P. 696] ; *People ex rel. Schumann* v. *McCartney, supra.*) Only after a judgment convicting him of neglect of duty by a board, may the head of the department discharge him.

While a police officer's right to his position will be protected by due process of law "in the broadest sense of the term" (*Ekern* v. *McGovern,* 154 Wis. 157 [142 N.W. 595, 46 L.R.A.N.S. 796]), he may not during his tenure, in disregard of express regulations, wrap his title to the office in the silken folds of his dreams and embark upon free adventure.

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied November 4, 1947, and appellant's petition for a hearing by the Supreme Court was denied December 15, 1947. Carter, J., and Schauer, J., voted for a hearing.