[Civ. No. 38013. Second Dist., Div. Five. Mar. 14, 1972.]

EDWARD J. HILL, Plaintiff and Respondent, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

## Counsel

Roger Arnebergh, City Attorney, James A. Doherty and John Daly, Assistant City Attorneys, Siegfried O. Hillmer and Arthur D. Rutledge, Deputy City Attorneys, for Defendants and Appellants.

Brumer & Hopson and John R. Hopson for Plaintiff and Respondent.

## OPINION

### STEPHENS, Acting P. J.—

#### OPINION AFTER REHEARING

This is an appeal by defendant, City of Los Angeles, from an adverse judgment rendered in an action for declaratory relief.

The facts are that on July 10, 1941, plaintiff, Edward J. Hill, was appointed to the position of police officer for defendant city. On April 27, 1942, plaintiff Hill signed and executed a "Request for Leave of Absence," wherein he stated and represented as the reason therefor that he had been or was being "[c]alled into U.S. Naval Reserve by enrollment in the U.S. Maritime Service under the direction of the U.S. Coast Guard (in accordance with section 17, City Charter)." On that same date, plaintiff was enrolled in the United States Maritime Service. On May 12, 1942, defendant city (board of civil service commissioners) approved Hill's request for leave of absence as filed. On or prior to September 25, 1945, the city concluded that Hill had never become a member of the United States Naval Reserve or of any other branch of the armed forces of the United States and, therefore, that he had not been and was not on a valid military leave of absence pursuant to any provision of law. On September 25, 1945, the record of Hill was ordered corrected to show that Hill had been duly granted a personal leave of absence. Hill was either enrolled in or served with the United States Maritime Service for the period from April 27, 1942 to January 14, 1947 (both dates inclusive), and on January 15, 1947, he returned to his position in the Los Angeles Police Department.[1] Hill served in the police department continuously thereafter until July 12, 1966, as of which time his request for retirement became effective. The request for credit for time served in the Merchant Marine was not granted, though Hill, at the time of filing his application for retirement on June 10, 1966, included in such request: "As a part hereof, petitioner prays that he be given credit toward retirement, in the calculation of his pension, for the period of April 27, 1942 to January 14, 1947, both dates inclusive, during which he was in the Maritime Service." The result of the city's failure to grant this request was that Hill's pension for 20 years of aggregate service was

---

[1]The question of possible waiver by Hill of his contention that he relied upon the "military leave" benefits under the charter at the time he returned to his position as police officer after being informed of the city's cancellation of his leave as so classified has not been argued on this appeal.

calculated at the rate of 40 percent, rather than 50 percent. It was to correct this alleged error of the city that the action was brought by Hill.

■ The basic question which must be answered is whether Hill, by virtue of his service in the Merchant Marine, came within the provisions of the Los Angeles City Charter, which provided for continuation of retirement credit during a "military leave" of absence to serve in the "armed forces" of the United States. The answer to this question is that he did not. Section 17 of the Los Angeles City Charter, to which specific reference was made in Hill's request for leave states:

"Every officer or employee who leaves, or has since January 1, 1940, left, his office or position to serve in the armed forces of the United States shall be entitled to leave of absence, hereinafter designated as 'military leave,' subject to all of the terms and conditions contained in the general laws of the state applicable to municipal officers or employees serving in such armed forces; . . . Every officer or employee returning from military leave to the service of the city in accordance with the applicable general laws of the state shall be entitled not only to restoration to his office or position, but also to any office or position to which he would be or would have been entitled. . . . In addition to retirement credit for the period of military leave up to noon of December 31, 1947, under the provisions of this section prior to this amendment, which credit is hereby continued in full force and effect, the period of any such military leave, subsequent to June 25, 1950, and up to but not extending beyond one year from the date upon which either the President or the Congress proclaims the end of the national emergency which the President proclaimed on December 16, 1950, shall be counted as part of the aggregate service required for retirement purposes under the provisions of Article XVII or Article XXXII of this Charter; . . ."

The applicable part of the articles referred to, and specifically article XVII, was at the time of the granting of Hill's leave and on his return as set forth in section 189: "In computing the time of service for retirement, the amount of time served in the United States Army, Navy, Marine Corps, or any division thereof, in time of war, by any member of the Fire or Police Department, who shall have left such department to enter the United States Army, Navy, Marine Corps, or any division thereof, and who shall have returned to such department within a period of one year after having been honorably discharged from such service, shall be counted as a part of the aggregate service required for a retirement pension." (This section was in effect as of 1927, and was repealed in 1951.)

As is clearly observed by a reading of the provisions of the charter

herein applicable, periods of leave creditable for retirement benefits are restricted to armed services duty, and this does not include service in the Merchant Marine, no matter how laudable that service may be. Hill, however, seeks to avoid the obvious result of noninclusion in the armed services' veteran provisions by asserting that the city is estopped from denying him such benefits once it had ostensibly granted them to him. We do not agree with this contention, and, since the trial court did concur, we hold as a matter of law, under the facts of this case, that no such benefits may be granted to him. As stated in *Boren* v. *State Personnel Board,* 37 Cal.2d 634 at page 643 [234 P.2d 981]: "To invoke estoppel in cases like the present would have the effect of granting to the state's agents the power to bind the state merely by representing that they have the power to do so. It is accordingly held that the authority of a public officer cannot be expanded by estoppel." And in *Haub* v. *Tuttle,* 80 Cal.App. 561 at page 569 [251 P. 925]: "The fact that said Commission has operated for a number of years under the interpretation appellants are contending for here cannot be held to affect the present legal situation for the reason that the exercise of powers by city officers, in excess of their authority, for a great length of time, will raise no presumption of a grant to the city of such powers." And in *Frisbee* v. *O'Connor,* 119 Cal.App. 601 [7 P.2d 316], it was held that neither a municipal corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized by its charter or by some legislative act applicable thereto, and that all acts beyond the scope of the powers granted are void. In *Wheeler* v. *City of Santa Ana,* 81 Cal. App.2d 811, 817 [185 P.2d 373], it is stated: "In no event will such estoppel operate where the act or contract relied on to create the estoppel is outside the corporate powers of the governmental agencies or officials. [Citing cases.]" Additionally, we find that estoppel would not apply under the facts of this case for another reason. ▮ As stated in *Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]: "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." ▮ The first condition is here not established. It was the representation of Hill that he was being inducted as part of the United States Naval Reserve, which resulted in the initial approval for the military leave. Since there was in fact no relationship of the service in which Hill was embarking to the United States Naval Reserve, Hill cannot be said to have been "ignorant of the true state of facts,"

the third element of estoppel. The fact that Hill was familiar with the section of the city charter (17) is clear from the fact of his request and the error engendered by the wording relative to the service into which he was to enter, and the request was drafted by, or on behalf of, Hill; it is in no way the action of the granting body or person.

Hill also contends that the provisions of the Civilian Reemployment Act for members of the merchant marine, title 50 United States Code, Appendix, section 1471 et seq.[2] guarantee his rights to retirement credit. This act provides for a member of the merchant marine, inter alia, to be restored to such position in which he had been employed prior to his entering said service. The identical contention has heretofore been considered by this court in *Redding* v. *City of Los Angeles* (1947) 81 Cal. App.2d 888 [185 P.2d 430], and has been determined adversely to the position of Hill. We feel bound to follow the precedent established in this very district, particularly since a hearing in *Redding* was denied by the California Supreme Court and a petition for certiorari was denied by the United States Supreme Court.[3]

At time of argument, it was at least inferred that "armed forces" as contained in the charter includes Merchant Marine personnel. If that was intended as a contention, it is without support. Government Code section 18540 defines "armed services," and the Merchant Marine service is not included in that definition. Then section 189 of the charter specifically set forth the services so recognized, and made no mention of the Merchant Marine. We therefore hold that those provisions of the state and those contained within the city charter not in conflict therewith constitute the applicable designation of persons entitled to "military" leave, with all the attendant benefits, including retirement credit (*Palaske* v. *City of Long Beach*, 92 Cal.App.2d 120 [208 P.2d 764]) for that time served as a member of the "armed forces" as specified (not including the Merchant Marine). In arriving at this conclusion, we do not demean the valor and dedication of the brave men who served in the Merchant Marine, many of whom gave their lives as a result of enemy action. We

---

[2](Also referred to as Public Law 87.)

[3]We recognize that in *Otis* v. *City of Los Angeles* (1942) 52 Cal.App.2d 605 [126 P.2d 954] (which also emanated from this district) the court stated that a city is *not* a "political subdivision," while in *Redding* the holding is that, for the purpose of construing the statutory intent of the Civilian Reemployment Act, title 50 United States Code, Appendix, section 1471 et seq., the status of a chartered city (being a municipal political body formed under the auspices of the state Constitution as augmented by legislative statute, and forming one of the governing bodies within the state) *is* a "political subdivision." Neither the court in *Redding* nor we in the instant case were called upon to construe the meaning of the term "political subdivision" other than in the context of its meaning within the provisions of the Civilian Reemployment Act.

do say that the beneficiaries of the legacies of the government must be designated by legislative branches of government, and not by the administrative or judicial branches.

The city argues still another reason for reversing the instant case, and that argument is based upon the reasoning of *Ferdig* v. *State Personnel Board*, 71 Cal.2d 96 [77 Cal.Rptr. 224, 453 P.2d 728]. It seems inappropriate to rest this decision upon any conclusion that there existed a fraudulent intent harbored by Hill, a man who from all appearances of the record has sought to assist his country where he believed he best could, as well as serving his locality in the exacting occupation of a police officer. We therefore do not analyze this contention of the city except as it may tangentially be related to the discussion of estoppel.

The judgment is reversed.

Aiso, J., and Reppy, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 10, 1972.