Filed 11/30/20  Marriage of Tetzlaff CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of KATHLEEN I. and ROBERT J. TETZLAFF. | |
| | D076922 |
| KATHLEEN I. TETZLAFF, | |
| Appellant, | (Super. Ct. No. DS20219) |
| v. | |
| ROBERT J. TETZLAFF, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Maryann D'Addezio Kotler, Judge.  Affirmed.

Law Office of Patrick L. McCrary and Patrick L. McCrary for Appellant.

Stephen Temko and Dennis G. Temko for Respondent.

Kathleen I. Tetzlaff (Kathy[1]) appeals from findings and an order after a post-judgment hearing at which, based on a request for an order by her former spouse, Robert J. Tetzlaff (Robert), the family court found changed circumstances, terminated child support for the parties' adult child, J., set Kathy's spousal support at $0, and terminated jurisdiction. As we explain, because Kathy has not established that the court's findings of fact are unsupported by substantial evidence, the legal conclusions are erroneous, or the rulings are beyond the bounds of reason, Kathy has not met her burden of establishing that the family court abused its discretion. Accordingly, we affirm.

## I. COMBINED FACTUAL AND PROCEDURAL BACKGROUND[2]

Kathy and Robert married in 1981 and separated more than 20 years later in 2001. Their daughter, J., was 20 years old at the time of separation and 38 years old at the time of the filing of the order on appeal.

In 2005, the parties entered into a marital settlement agreement and, in uncontested proceedings, obtained a judgment of dissolution of their marriage; the judgment incorporated the settlement agreement. In part, the agreement provided: Robert must pay Kathy monthly spousal support of $3,000; and Robert must pay Kathy monthly support of $1,734 for J., "pursuant to Family Code § 3910(a)[,] which provides for the payment of

---

[1] For clarity and ease of reading, both parties have used first names in their appellate briefs. In doing the same in this opinion, we intend no disrespect.

[2] Given the deferential standard of review (see pt. II., *post*) and no statement of decision, we recite the facts, especially those where the evidence conflicts, in a light most favorable to Robert, as the prevailing party. (*In re Marriage of Brooks* (2019) 33 Cal.App.5th 576, 589.)

support for a child of whatever age who is incapacitated from earning a living and without sufficient means."[3]

In 2014, the family court granted Robert's request to modify Kathy's spousal support and lowered the monthly amount to $1,700. In addition, the court also denied Robert's request to terminate adult child support for J., then almost 33 years old, and set the monthly amount at $2,002.

In 2018, more than 16 years after the parties separated and more than 12 years after the parties divorced, Robert filed a request for orders to terminate spousal support for Kathy and to modify adult child support for J., who was then almost 37 years old (RFO). In support, he submitted a memorandum of points and authorities, a declaration, and an income and expense declaration.

With regard to changed circumstances, Robert testified that, in February 2018 at a time when he was at least 66 years old, he was "forced into retirement" after having been laid off from his employment; and J. had become "fully capable of working." As to the merits of the spousal support issue, Robert first emphasized that, at the time of the parties' divorce in 2005, "and at all subsequent hearings," the family court had given Kathy at least six "*Gavron* warnings . . . to become self-supporting."[4] As to the merits

_____

[3]    Family Code section 3910, subdivision (a) (section 3910(a)) provides in full: "The father and mother have an equal responsibility to maintain, to the extent of their ability, a child of whatever age who is incapacitated from earning a living and without sufficient means." (Further undesignated statutory references are the Family Code.)

[4]    Named after the rule announced in *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, a "*Gavron* warning" requires that, before a spousal support order may be terminated or reduced, the supported party must be given fair notice of the expectation that the supported party become self-sufficient and a reasonable opportunity to achieve that goal. (*Id*. at pp. 711-712.) In

of the adult child support issue, Robert emphasized that, because J. is capable of working, she is no longer "incapacitated from earning a living" (§ 3910(a)); and because she is able to earn a living, he no longer has the section 3910(a) "responsibility to maintain" her. He then argued that, given his new monthly income of $4,677 and his ongoing monthly expenses of $6,454,[5] he could no longer afford to pay spousal support or adult child support.

Kathy opposed the RFO. In her responsive declaration, she set forth her reasons for maintaining the current spousal and adult child support and requested orders that Robert continue providing health insurance for J., reimburse Kathy for half of J.'s uninsured medical expenses, and award Kathy reasonable attorney fees. She filed a declaration from counsel in support of the attorney fees request and an income and expense declaration.

At a hearing on September 17, 2018, the court issued the following "interim orders" on Robert's RFO, pending a continued hearing in December 2018: On a monthly basis, Robert was to pay "Interim Spousal Support" of $1,000 and "Interim Child Support" of $1,800; Kathy was to establish a special needs trust for J.; and Kathy was to apply for Social Security benefits for both herself and J.

---

application, where a supported spouse has received a *Gavron* warning and "has unreasonably delayed or refused to seek employment consistent with his/her ability," that factor may be considered in modification proceedings. (*In re Marriage of Heistermann* (1991) 234 Cal.App.3d 1195, 1204.)

[5]    At the time Robert filed the RFO, his income and expense declaration established monthly income of $1,588 from "Pension/retirement fund payments" and $3,089 from "Social security retirement (not SSI)" and monthly expenses of $6,454.

4

In preparation for the continued hearing in December 2018, Kathy filed a memorandum of points and authorities and additional declarations from her and her attorney. Likewise, Robert filed two declarations, one updating his income and expenses and another replying to the facts in Kathy's recent declaration.

The December 2018 hearing was continued until August 6, 2019, at which time the family court presided over a half-day evidentiary hearing. In preparation for this hearing, Robert filed an updated income and expense declaration.[6]

In January 2020, the family court filed findings and an order after the hearing on Robert's RFO (FOAH).

In the FOAH, the court first found that Robert's forced retirement constituted a material change in circumstances. The court then acknowledged that, for purposes of determining whether modification of spousal support was justified, "it must consider the criteria set forth in Family Code section 4320";[7] and we have no reason to believe this was not done. After analyzing some, but not all, of the section 4320 factors, the court set spousal support at $0 and terminated jurisdiction to order spousal

---

[6] By the time of the evidentiary hearing on the RFO almost a year after the interim awards, Robert's current income and expense declaration disclosed total monthly income of $4,752 (comprised of $1,500 from "Pension/retirement fund payments" and $3,252 from "Social security retirement (not SSI)") and total monthly expenses of $8,677.

[7] Section 4320 provides in part: "In ordering spousal support under this part, the court shall consider all of the following circumstances: [¶] (a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following: [¶] . . . [¶] . . . [¶] (n) Any other factors the court determines are just and equitable."

5

support. In doing so, the court found in part as follows: "[Robert] paid for [Kathy's] education enabling her to find employment as a beauty technician"; however, "[s]he has never worked outside the home"; although the parties "separated in 2001 and have been divorced since 2005" and Kathy "has received approximately six *Gavron* warnings," Kathy "chose not to seek employment for the last 18 years"; during this time, Kathy "has had ample time and the ability to become self-supporting." The court further found that, although Kathy "does need financial support," she received "approximately $200,000" at the time of the dissolution of marriage[8] and "spousal support for 18 years"; and the court concluded that Kathy "failed to manage her finances in such a manner to enable her to become self-supporting" (citing *In re Marriage of McElwee* (1988) 197 Cal.App.3d 902, 909-910 ["just as lack of diligence in seeking employment may lead to a refusal to award spousal support [citation], so too may improvident management of assets, which were sufficient to provide self-sufficiency in the accustomed lifestyle, justify termination of support and jurisdiction even though such an order may result in an alteration in the supported spouse's lifestyle"]). Finally, consistent with the evidence in his income and expense declaration, the court also ruled that Robert "does not have the ability to pay spousal support."

With regard to adult child support, the family court granted Robert's request and terminated Robert's then-current obligations to provide section 3910(a) support for J. In principal part, the court relied on Robert's testimony that J. was able to earn a living, on the additional evidence that J. had been denied Social Security benefits on several occasions, and on the

---

8    At the time of the parties' divorce, Robert paid Kathy the cash equivalent of half of his retirement accounts. We do not know whether those funds are part of the $200,000 payment.

record which lacked *any* expert evidence that J. was disabled or otherwise incapacitated from earning a living.

Kathy appealed from the FOAH.[9]

## II. DISCUSSION[10]

On appeal Kathy argues that the family court erred: (1) in imputing to Kathy the ability to become self-supporting; (2) in not making specific findings as to the standard of living during the parties' marriage; (3) in terminating jurisdiction to order spousal support; and (4) in placing on Kathy, the non-moving party, the burden of proving that circumstances had not changed for purposes of determining whether adult child support could be modified. As we explain, because Kathy has not met her burden of establishing reversible error, we will affirm the FOAH.

We review an order modifying spousal support for an abuse of discretion. (*In re Marriage of T.C. & D.C.* (2018) 30 Cal.App.5th 419, 423.)

---

[9] Robert suggests that this court lacks jurisdiction because Kathy appealed from the *non-appealable* August 2019 minute order. (See *Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1283 [where the court directs the preparation of a written order, "an appeal may not lie from the minute order"].) The argument is frivolous, since Robert was served with both (1) this court's letter that, upon the submission of a formal order, we would construe Kathy's notice of appeal as being from the formal order, and (2) Kathy's submission of a formal order—i.e., the FOAH—10 days later.

[10] Kathy has not provided a reporter's transcript (or agreed or settled statement) from the August 2019 half-day evidentiary hearing. Thus, as Kathy acknowledges in her opening brief, for any issue that depends on the adequacy of the evidence presented, her " '[f]ailure to provide an adequate record . . . *requires* that the issue be resolved against [her].' " (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*), italics added.) That is because the appellant has the burden of establishing reversible error on appeal (*ibid.*), and "it is presumed that the unreported . . . testimony would demonstrate the absence of error" (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 (*Fain*)).

7

We review an order terminating spousal support for an abuse of discretion. (*In re Marriage of Pasco* (2019) 42 Cal.App.5th 585, 590.) We review an order modifying adult child support for an abuse of discretion. (*In re Marriage of Drake* (2015) 241 Cal.App.4th 934, 939 (*Drake*).)

"In exercising its discretion the trial court must follow established legal principles and base its findings on substantial evidence." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47, fn. omitted [modification of spousal support].) Because a "proper exercise of judicial discretion requires the exercise of discriminating judgment within the bounds of reason, and an absence of arbitrary determination, capricious disposition, or whimsical thinking" (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682-683 [set aside judgment]), the family court abuses its discretion when, after considering all of the circumstances, its decision " 'has "exceeded the bounds of reason" or it can "fairly be said" that no judge would reasonably make the same order under the same circumstances' " (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480 (*Smith*) [modification of spousal support]).

A.    *Imputing to Kathy the Ability to Become Self-Supporting*

Suggesting that "[t]he normal . . . retirement age here is 66" (citing *In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1276), Kathy argues that the family court erred in imputing to her the ability to be self-supporting, essentially requiring her to become employed. According to Kathy, she is 68 years old and "[n]o one should be compelled to work after their normal retirement age" (citing *In re Marriage of McLain* (2017) 7 Cal.App.5th 262 (*McLain*)).[11]

---

[11]    In passing, Kathy suggests that the FOAH denies her equal protection of the law, in that the effect of the FOAH allows 68-year-old Robert to retire whereas 68-year-old Kathy must now become employed. Preliminarily, neither the evidence from the hearing nor anything in the FOAH requires

Initially, Kathy's reliance on *McLain* is misplaced. In *McLain*, the court relied on *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373 (*Reynolds*), and the issue in both *McLain* and *Reynolds* was whether the *supporting spouse* can be compelled to work past retirement age *in order to maintain* the same level of spousal support as when the supporting spouse was fully employed. (*McLain, supra*, 7 Cal.App.5th at p. 268, quoting *Reynolds*, at p. 1378 [" 'we hold that no one may be compelled to work after the usual retirement age of 65 in order to pay the same level of spousal support as when he was employed' "].) Here, of course, Kathy is the *supported spouse*, and the authorities she cites do not speak to the work obligations of the *supported spouse*.[12]

Moreover, and determinative of the issue, the FOAH neither "imput[es to Kathy] the ability to be self-supporting" nor "requires Kathy

---

Kathy to work or precludes her from retiring. In any event, Kathy forfeited appellate review of this constitutional issue on at least two grounds: (1) Kathy did not raise an equal protection argument in the family court (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 958 ["A party typically forfeits constitutional issues not raised in earlier civil proceedings"]; *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 510 (*Brewster & Clevenger*) [on appeal, " 'new arguments may be deemed waived, based on common notions of fairness' "]); and (2) in a two-sentence explanation of her equal protection argument, Kathy presents insufficient legal authorities or analyses (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"]; see Cal. Rules of Court, rule 8.204(a)(1)(B)). We thus express no opinion on her constitutional argument.

[12] Thus, to the extent *McLain* and *Reynolds* are applicable here, they support only a ruling that *Robert*, as the *supporting spouse*, cannot be compelled to work past normal retirement age. (*McLain, supra*, 7 Cal.App.5th at p. 268; *Reynolds, supra*, 63 Cal.App.4th at p. 1378.)

9

to become employed," as she tells us.  (Some capitalization and bolding omitted.)

In attempting to convince us otherwise, Kathy argues that, "[a]bsent support[,] [she] lives on $1,001 per month," citing the FOAH.  However, that is *not* what the FOAH says.  The court found only that Kathy "*receives* [S]ocial [S]ecurity benefits in the amount of approximately $1001/month."[13] (Italics added.)  In any event, the court made other findings that fully support the rulings in the FOAH, regardless whether Kathy believes she must now seek employment.  For example, despite having "received approximately $200,000 and . . . spousal support for 18 years," Kathy "failed to manage her finances in such a manner to enable her to become self-supporting."[14]  Also,

_____

[13]    Although Kathy's statement about "liv[ing] on $1,001 per month" may be supported by evidence or inferences from evidence in the record, we do not consider it here for at least three independent reasons:  (1) Kathy has not cited us to the evidence on which she might be relying; (2) the issue is not whether the record contains evidence in support of findings the losing party wishes the court had made, but " 'whether there is some evidence that, if believed, would support the findings' " actually made (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 703 (*Fregoso & Hernandez*)); and (3) as the losing party, Kathy is not entitled to the benefit of inferences from evidence (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 35 ["the reviewing court should draw all reasonable inferences in *favor* of the judgment below," reversing the intermediate appellate court decision that "incorrectly chose to draw those inferences *least* in favor of the judgment below"]).

[14]    We are aware of, and sympathetic to, Kathy's explanation of what she characterizes in her appellate briefing as "her financial woes."  In addition, we have reviewed the detailed evidence she submitted to the family court in opposition to the RFO, in which she explains the many causes (mostly out of her control) that she attributes to her financial situation.  However, we do not consider that evidence for purposes of accepting the family court's finding that Kathy mismanaged her finances (or any other finding); we consider *only*

10

in violation of at least six *Gavron* warnings (that the court expected her to become self-sufficient), Kathy "*chose* not to seek employment for the last 18 years"—even though she "had ample time and the ability to become self-supporting." (Italics added.) Finally, due to the change in circumstances related to his (involuntary) loss of employment, Robert "does not have the ability to pay spousal support."

B.    *Findings Regarding the Marital Standard of Living*

Kathy argues that the family court erred when, in ruling on Robert's request to modify and terminate spousal support, the court failed to make a factual finding as to the marital standard of living.[15] In support of her argument, Kathy relies on section 4332, which provides in part: "In a proceeding for dissolution of marriage . . . of the parties, the court shall make specific factual findings with respect to the standard of living during the marriage[.]" Here, the FOAH makes no mention of the marital standard of living, and on that basis Kathy contends the FOAH must be reversed and the matter remanded for a new trial on spousal support.

However, not all error is *reversible* error. As we explain, even if we assume without deciding that the family court erred, because Kathy has not established that she suffered prejudice as a result of the lack of section 4332

---

the evidence in support of the finding actually made, and if it is substantial, we must accept the finding, regardless whether there is other evidence, even weightier evidence, that is contrary to the court's finding. (*Fregoso & Hernandez*, *supra*, 5 Cal.App.5th at p. 703.)

[15] "The marital standard of living is 'a general description of the station in life the parties had achieved by the date of separation,' rather than a 'mathematical standard.'" (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 424.) It is not "'the absolute measure of reasonable need,'" but "'merely a threshold or reference point against which all of the statutory factors may be weighed.'" (*Id*. at pp. 424-425.)

11

findings, she has not met her burden of establishing that the FOAH be reversed.

"We begin with the understanding that a procedural error by itself is generally insufficient to set aside a judgment or order." (*In re Marriage of Kent* (2019) 35 Cal.App.5th 487, 496.) That is because "the presumption in the California Constitution is that . . . '. . . any error as to any matter of procedure,' is subject to harmless error analysis and must have resulted in a 'miscarriage of justice' in order for the judgment to be set aside." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56 (*Goddard*); see Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.[16]) In this regard, the burden is on the party challenging the order, here Kathy, to "demonstrate the error was prejudicial, that is, that it is reasonably probable a result more favorable to that party would have been reached in the absence of the error." (*In re Marriage of Jackson* (2006) 136 Cal.App.4th 980, 997 (*Jackson*).)

Because Kathy does not mention, let alone attempt to establish, prejudice, she necessarily failed to demonstrate reversible error. (*Goddard, supra*, 33 Cal.4th at p. 56; *Jackson, supra*, 136 Cal.App.4th at p. 997.)

In any event, because "the marital standard of living takes on less significance with the *postseparation passage of time*" (Hogoboom & King, Cal.

[16] Article VI, section 13 of the California Constitution provides in part: "No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

Code of Civil Procedure section 475 provides in part: "No judgment . . . shall be reversed . . . , unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error, . . . the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed."

Practice Guide: Family Law (The Rutter Group 2020) ¶ 17:156.2, p. 17-66), we have no difficulty concluding that the record on appeal establishes a lack of prejudice in the family court's failure to make a finding as to the marital standard of living. The parties in this appeal separated in 2001, more than 18 years prior to the FOAH. During those 18 years, Robert began paying Kathy temporary spousal support in 2001; and as of and after the judgment in this action, the court ordered permanent spousal support (of $3,000/mo. in 2005) and twice modified it downward (to $1,700/mo. in 2014 and to $1,000/mo. in 2018) *without any section 4322 findings regarding the marital standard of living*. Very simply, if findings regarding the marital standard of living were not at issue over the course of 18 years and at least four rulings awarding spousal support, Kathy is not prejudiced by the failure to find the standard in this fifth ruling. Finally, we find further support for our ruling that Kathy suffered no prejudice, because regardless of the marital standard of living almost 20 years ago, *today* Robert "does not have the ability to pay spousal support."

C.    *Terminating Jurisdiction to Order Spousal Support*

Kathy argues that the family court erred in terminating jurisdiction to order spousal support. Emphasizing that the parties here had a long-term marriage,[17] Kathy relies on the following language from our Supreme Court regarding the retention of jurisdiction:

_____

[17]    Section 4336 provides that, for purposes of retaining jurisdiction to order spousal support, "the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage . . . where the marriage is of long duration," and "there is a presumption . . . that a marriage of 10 years or more, from the date of marriage to the date of separation, is a marriage of long duration." (§ 4336, subds. (a), (b).) That said, subdivision (c) directs that nothing in this statute "limits the court's discretion to terminate spousal support in later proceedings on a showing of changed circumstances."

13

> "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, *unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. . . .* If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction." (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 (*Morrison*), italics added.)

According to Kathy, because the record does not contain evidence that she, the supported spouse, "will be able to adequately meet . . . her financial needs at the time selected for termination of jurisdiction" (*ibid*.), the FOAH must be reversed.[18] We disagree.

After the statement from *Morrison* on which Kathy relies, the Supreme Court continues, explaining that the above-quoted ruling "will not require a trial court to retain jurisdiction in every case involving a lengthy marriage." (*Morrison, supra*, 20 Cal.3d at p. 453.) To the contrary, the family court continues to maintain the discretion to award—as the court did here—"no support . . . *without a retention of jurisdiction.*" (*Ibid*., italics added.) "Where jurisdiction has been retained in the original order, future modification hearings may well reveal that the supported spouse . . . has delayed seeking employment, or has refused available employment. At that time, the court may appropriately consider such factors in deciding whether or not to modify its original order." (*Ibid*., citing *In re Marriage of Rosan* (1972) 24 Cal.App.3d

---

18    Because Kathy did not provide a reporter's transcript, we normally presume that the unreported testimony from the evidentiary hearing contains evidence that Kathy *is* able to meet her financial needs. (*Jameson, supra*, 5 Cal.5th at p. 609; *Fain, supra*, 75 Cal.App.4th at p. 992.) However, since the court expressly found that Kathy "does need financial support," we will not base our decision on the presumption.

885, 896 [in modification proceedings, the family court may consider evidence that the supported party "has unreasonably delayed or refused to seek employment consistent with his or her ability"].)

Very simply, the general rule disfavoring termination of jurisdiction on which Kathy relies (i.e., after a lengthy marriage, a family court should not terminate spousal support unless the supported spouse is able to meet his or her financial needs) is subject to an exception, in the court's discretion, where the supported spouse has refused to seek employment. (*Morrison*, *supra*, 20 Cal.3d at p. 453.) Here, the court applied this exception after finding that Kathy "chose not to seek employment for the last 18 years," despite the fact that "[Robert] paid for [Kathy's] education enabling her to find employment as a beauty technician."

D.     *Burden of Proving Changed Circumstances to Modify Adult Child Support*

As part of its ruling terminating adult child support for J., the family court stated:  "Insufficient evidence was presented for the court to find that [J.] is a disabled adult child per Family Code section 3910(a)."[19]  Based on this statement, Kathy contends that the court erred in placing the burden *on her* to establish whether J. qualified as "a child . . . who is incapacitated from earning a living and without sufficient means" for purposes of section 3910(a).  As we explain, we reject this contention, because that is not what the family court did.  As we explain first, we also reject Kathy's argument that the court's earlier awards of section 3910(a) support precluded the court from revisiting the issue of whether J. *currently* qualified for support under section 3910(a).

_____

[19]     Under section 3910(a), the family court considers two factors:  "is the adult child incapacitated from earning a living"?; and "does the adult child have sufficient means"? (*Drake*, *supra*, 241 Cal.App.4th at p. 940.)

15

As part of their 2005 marital settlement agreement, which is attached to and incorporated into the judgment, the parties agreed (and the court ordered) that Robert pay Kathy monthly support of $1,734 for J., "pursuant to Family Code § 3910(a)[,] which provides for the payment of support for a child of whatever age who is incapacitated from earning a living and without sufficient means." In 2014, the court denied Robert's request to terminate section 3910(a) support for J. From these two rulings, Kathy argues that the family court erred in terminating support, because "the issue [whether J. is an adult dependent child for purposes of section 3910(a)] is 'res judicata.' " Once again, however, for at least two reasons, Kathy has forfeited appellate review of this res judicata argument: (1) Kathy did not raise this argument in the family court (*Brewster & Clevenger*, *supra*, 45 Cal.App.5th at p. 510; and (2) the above-quoted statement is Kathy's entire presentation—i.e., one without legal authorities or analyses (*Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 830; see Cal. Rules of Court, rule 8.204(a)(1)(B)).

Even if we were to consider the argument, however, the result would be no different. That is because "[t]he court retains the power to modify its award [of adult child support] if circumstances change." (*Rebensdorf v. Rebensdorf* (1985) 169 Cal.App.3d 138, 143 [under statutory scheme prior to § 3910(a)].) This is not a new concept. (See *Paxton v. Paxton* (1907) 150 Cal. 667, 672 [under statutory scheme prior to § 3910(a), "changed conditions in the future should justly demand a modification"].) Indeed, the doctrine of res judicata is *the reason* for requiring a showing of changed circumstances before modifying a final support order. (*In re Marriage of Cohen* (2016) 3 Cal.App.5th 1014, 1025 [child support].) That is because without a change of circumstances, a modification motion would be " ' " ' "nothing more than an

16

impermissible collateral attack on a prior final order." ' " ' " (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 357 [child support].)

Initially, with regard to the change of circumstances, we reject Kathy's argument that a reversal is necessary, because "there has been *no evidence to show* that there was a change in circumstances concerning the dependency of the adult child." (Italics added.) As Kathy acknowledges, because she did not provide a reporter's transcript, we must presume that the unreported proceedings contain substantial evidence to support *all* findings expressly or impliedly made. (*Jameson, supra*, 5 Cal.5th at p. 609; *Fain, supra*, 75 Cal.App.4th at p. 992.)

In any event, Kathy concedes: "It is not contested that there has been a 'change in circumstances' as Robert has retired." In addition, and not acknowledged by Kathy, is the following testimony from Robert: "[J.] is capable of working and has done so throughout the years. She is capable of taking care of herself. . . . She is . . . being treated for her schizophrenia and bi-polar [disorder]. These do not preclude her from working and being self-supporting." Together, this constitutes substantial evidence of *both* a material change in circumstances *and* a basis on which to conclude that J. was no longer "incapacitated from earning a living" for purposes of awarding adult child support.

Kathy suggests that, because the FOAH provides that " '[i]nsufficient evidence was presented for the court to find that [J.] is a disabled adult child per Family Code section 3910(a),' " the court (improperly) placed the burden on Kathy to prove no change in circumstances. We disagree. In the FOAH, the court identified the issue as "[Robert's request] to find [J.] is not disabled pursuant to Family Code section 3910(a)"; and from the evidence set forth in the preceding paragraph and the presumptions from the unreported

proceedings, the record contains substantial evidence in support of Robert's request. There is no indication that the court placed any burden on Kathy other than providing *responsive* evidence to rebut Robert's prima facie showing that J. was no longer disabled for purposes of section 3910(a). *In context*, the court's statement is easily understood to mean that, in attempting to meet her burden in response to Robert's showing that J. no longer qualifies for section 3910(a) support, Kathy did not persuade the court to the contrary.

## III. DISPOSITION

The January 27, 2020 findings and order after hearing is affirmed. Robert is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.

18